## UNION PACIFIC RAILROAD COMPANY,

v.

## GREENTREE TRANSPORTATION TRUCKING CO.; Dave Saunders Trucking,

Greentree Transportation Trucking Company, Appellant.

No. 00–3326.

United States Court of Appeals, Third Circuit.

May 16, 2002.

gy to § 3663 and relating the type of inquiry therein to offenses committed in the Virgin Islands, we recognize that after Davis had been filed, a new provision was enacted by Congress which requires that restitution be ordered regardless of a defendant's ability to pay where particular federal crimes have been committed (including crimes against property). *See* 18 U.S.C. §§ 3663A(c)(1)(A)(ii) and 3664(f)(1)(A). No similar legislation, however, has been enacted for Virgin Islands crimes. Accordingly, in the absence of such legislation, we prescribe a practice to be utilized where Virgin Islands crimes are committed which would not only permit restitution, but which would take into account the defendant's resources in being able to pay the restitution.

Before SCIRICA and AMBRO, Circuit Judges, and POLLAK, District Judge.*

## OPINION OF THE COURT

POLLAK, District Judge.

This case involves a shipment of cigarettes, a train derailment, and a stolen trailer. The issues before this court are whether the Carmack Amendment to the Interstate Commerce Act applies to the case at hand and, if so, whether the Dis-

trict Court properly entered summary judgment in favor of the plaintiff railroad.

## I. Background

A large quantity of cigarettes was to be sent–first by train and then by ship–from Atlanta to Tokyo. The Atlanta shipper of the cigarettes was Brown & Williamson Tobacco Co., the Tokyo consignee was Sumitomo Corp., and the intended final carrier by water, culminating in delivery to the consignee, was American President Lines, which issued a bill of lading covering the shipment.[1] The Norfolk & Southern picked the shipment up in Atlanta on November 11, 1996, and transported it by rail to New Orleans, where the shipment was transferred to the Southern Pacific. (Union Pacific, the plaintiff in the District Court and appellee here, is the successor in interest of Southern Pacific.) If the delivery had proceeded according to plan, Southern Pacific would have delivered the shipment of cigarettes to San Pedro, California, at which point the American President Lines vessel *APL Wisdom* would have transported the cigarettes to Tokyo.

All did not go according to plan. The Southern Pacific train that was carrying the shipment of cigarettes, along with other shipments, derailed in Painted Rock, Arizona, on November 16, 1996. After the cigarettes were taken from the derailment site to the Southern Pacific yard in Phoenix, Ronald Appelt, a Southern Pacific field manager, discussed the transportation of two trailers to California with Dave Saunders, an independent trucking contractor. Saunders, who had entered into a trip lease with Greentree Transportation Company (a defendant in the District Court and appellant here), represented that

---

* Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. While the bill of lading seems not to have been included in the record on appeal, appellant's recital of the participants to the bill of lading is not contested by appellee.

Greentree would charge Southern Pacific $2904 to deliver the two trailers to California.[2]

Trailer number REAZ610430, bound for Desert Empire Storage in San Bernadino, was to be driven by Saunders. Trailer number XTRZ230873, bound for a dock in San Pedro, was to be driven first by Gary O'Donnell, another independent Greentree driver, and then by Saunders. This latter trailer contained the cigarette shipment. The arrangement that Appelt and Saunders agreed on was that O'Donnell would transport his portion of the shipment–the San Pedro-bound trailer–to the Beacon Truck Stop in San Bernadino and would then leave the shipment unattended until Saunders could take over the shipment. Upon arrival at a dock in San Pedro, this trailer was to be loaded onto the American President Lines vessel *APL Wisdom*, which would transport the cigarettes to their final destination in Tokyo.

The first part of this arrangement proceeded smoothly. When Saunders arrived at the Beacon Truck Stop in San Bernadino, he acknowledged receipt of the San Pedro-bound trailer from O'Donnell in good condition. Saunders then proceeded to deliver the San Bernadino-bound trailer to its destination, at Desert Empire Storage in San Bernadino. At this point, the operation ceased to proceed smoothly.

When Saunders returned to the Beacon Truck Stop, the location where the San Pedro-bound trailer had been left, he discovered that the trailer—including, of course, the shipment of cigarettes inside the trailer—was missing. It was determined that the trailer and the shipment of cigarettes had been stolen.

Notwithstanding the theft of one of the two trailers, Greentree billed Southern Pacific $2904, the rate originally quoted by Saunders in his discussions with Appelt for the transportation of the two trailers. Southern Pacific paid the entire $2904 to Greentree, and also paid the full value of the stolen freight–$160,977.58–to what Union Pacific refers to in its pleadings as "its Customer."[3] Southern Pacific demanded reimbursement in this amount ($160,-977.58) from Greentree. While Greentree's insurance carrier ultimately paid $10,000 to Union Pacific, as successor in interest to Southern Pacific, the remaining $150,977.58 has not been paid by Greentree or its insurance carrier.

Union Pacific filed a complaint in the District Court for the Western District of Pennsylvania on November 16, 1998, seeking money damages from Greentree in the amount of $150,977.58. Union Pacific filed its complaint pursuant to the Carmack Amendment to the Interstate Commerce Act. 49 U.S.C. § 14706(a)(1) (1997).[4] After Greentree filed an answer, Union Pacific

---

2. Greentree was not informed of the contract that Saunders entered into on its behalf until the delivery to California went awry. In its memorandum contesting Union Pacific's motion for summary judgment, Greentree suggested that Saunders did not have authority to bind Greentree in this contract. Para. 10. The District Court, however, found that Saunders did have the authority to bind Greentree, Mem. Op. at 7 (W.D.Pa. Feb. 29, 2000), and this finding has not been challenged on appeal.

3. While Union Pacific does not make clear whether "its Customer" was Brown & Wil-liamson or Sumitomo or some other entity, the identity of the "Customer" does not matter for the purposes of this appeal.

4. (a) General Liability.–

(1) Motor carriers and freight forwarders.–A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or

moved for summary judgment. On February 29, 2000, the District Court granted Union Pacific's motion for summary judgment and awarded damages in the amount of $150,977.58. On March 10, 2000, Greentree filed (1) a motion pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the grant of summary judgment in favor of Union Pacific, and (2) a motion for summary judgment in Greentree's favor. On March 29, 2000, before the District Court had ruled on either of Greentree's two motions, Greentree filed a notice of appeal in this court, appealing the "Final Judgment entered in this action on the 29th day of February, 2000." On April 18, 2000, this court entered an order staying the appeal pending disposition by the District Court of Greentree's Rule 59(e) motion and summary judgment motion. On April 24, 2000, the District Court entered an order denying both of Greentree's motions. Greentree's appeal then proceeded in this court, without any amendment of the notice of appeal.

## II. Applicability of the Carmack Amendment to the Case at Bar

 Greentree contends that (1) under the Carmack Amendment, only a shipper or other "person entitled to recover under the receipt or bill of lading," 49 U.S.C. § 14706(a)(1), is a proper plaintiff, and (2) Union Pacific is not a shipper or other "person entitled to recover under the receipt or bill of lading" but an intermediate carrier, and therefore the District Court lacked authority to entertain Union Pacific's suit against Greentree.[5] The Supreme Court has held that the Carmack Amendment was enacted "to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods," *Reider v. Thompson*, 339 U.S. 113, 119, 70 S.Ct. 499, 94 L.Ed. 698 (1950), by permitting a shipper to hold either the initiating carrier or delivering carrier liable for damages to its goods in interstate commerce, *Mexican Light & Power Co. v. Tex. Mexican Ry. Co.*, 331 U.S. 731, 733, 67 S.Ct. 1440, 91 L.Ed. 1779 (1947), regardless of which carrier actually caused the damage. An initiating or delivering carrier liable to a shipper may then recover from a connecting carrier for damages that occur on the connecting carrier's line. *Id. See also Commodity Credit Corp. v. Norton*, 167 F.2d

chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported....

....

(b) Apportionment.–The carrier issuing the receipt or bill of lading under subsection (a) of this section or delivering the property for which the receipt or bill of lading was issued is entitled to recover from the carrier over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property....

49 U.S.C. § 14706 (1997).

**5.** Greentree argues that this issue goes to the subject matter jurisdiction of the District Court; Union Pacific maintains that Greentree did not raise a jurisdictional argument before the District Court entered summary judgment in Union Pacific's favor, thereby making it inappropriate for this court to entertain Greentree's "jurisdictional" contention. However, the District Court, at page 9 of its April 24, 2000 denial of Greentree's 59(e) and summary judgment motions, stated that, in granting Union Pacific's summary judgment motion on February 29, 2000, it had found that "Union Pacific had entered into a separate contract with Greentree after the train derailment and that Union Pacific was a shipper for purposes of its relationship with Greentree." Greentree's re-labeling of its argument as a jurisdictional one neither strengthens nor weakens it.

161, 164 (3d Cir.1948) (quoting *Ga., Fla. & Ala. R.R. Co. v. Blish Milling Co.*, 241 U.S. 190, 194, 195, 36 S.Ct. 541, 60 L.Ed. 948 (1916)).

■ Under ordinary circumstances, a through bill of lading is issued by the initiating carrier and presented to the shipper. This document "governs the entire transportation, and thus fixes the obligations of all participating carriers to the extent that the terms of the bill of lading are applicable and valid." *Commodity Credit Corp.*, 167 F.2d at 164 (*quoting Blish Milling Co.*, 241 U.S. at 194, 195, 36 S.Ct. 541). The Supreme Court explained in *Mexican Light & Power* that a second bill of lading issued by a connecting carrier does not alter the terms of the original bill of lading "unless the connecting carrier has received a consideration for the bill of lading in addition to that which flowed under the bill of lading issued by the initiating carrier." 331 U.S. at 734, 67 S.Ct. 1440.

In the case at bar, there was uncontroverted evidence that, subsequent to the issuance by American President Lines of a bill of lading, Southern Pacific and Greentree entered into a second contract of carriage: a contract under which Greentree was to receive–and, in the event, did receive–$2904 to transport two trailers, one of which contained the shipment of ciga-

rettes, from Phoenix to California. This contract was separate from the American President Lines bill of lading, and the consideration paid to Greentree was–as the Court put it in *Mexican Light & Power*– "in addition to that which flowed under the [first] bill of lading." *Id.*[6] Thus, Union Pacific (in succession to Southern Pacific), *as shipper*, properly initiated this suit against Greentree, *as carrier*, pursuant to the Carmack Amendment.[7]

### III. Summary Judgment

Greentree raises two additional issues for review: (1) whether the District Court erred in not granting summary judgment to Greentree due to a contractual time bar on bringing suit; and (2) whether the District Court overlooked genuine issues of material fact, thereby committing error in granting summary judgment to Union Pacific.

### A. Standard of review

■ On an appeal from an order entering summary judgment, this court undertakes *de novo* review, applying the same standard the District Court should apply. Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). While the record

---

**6.** In *Mexican Light & Power*, the Court spoke of the first bill of lading as one "issued by the initiating carrier." 331 U.S. at 734, 67 S.Ct. 1440. In the case at bar, the first bill of lading was issued not by the initiating carrier, Norfolk & Southern, but by the final carrier, American President Lines. It does not appear that this factual distinction is of any legal consequence.

**7.** The point was succinctly made by the District Court at page 6 of its memorandum opinion of April 24, 2000, denying Greentree's 59(e) motion and motion for summary judgment:

On September 1, 1999, Union Pacific moved for summary judgment. In opposition thereto, Greentree made the very same argument that it raises again in its Rule 59(e) motion, i.e., Union Pacific's status as a shipper. The Court has already addressed this issue and found that after the unexpected train derailment Union Pacific entered into a separate contract with Greentree for the transport of the freight from Arizona to California.

Mem. Op. at 7 (W.D.Pa. Apr. 24, 2000).

on appeal must be viewed in the light most favorable to the party who lost on summary judgment in the District Court, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), an appellate court may only review the record as it existed at the time summary judgment was entered. In reviewing a summary judgment order, an appellate court "can consider only those papers that were before the trial court. The parties cannot add exhibits, depositions, or affidavits to support their position. Nor can they advance new theories or raise new issues in order to secure a reversal of the lower court's determination." 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 2716 (1998), *previous edition cited by Drexel v. Union Prescription Ctrs., Inc.*, 582 F.2d 781, 784 n. 4 (3d Cir.1978).

■ In addition, an appellate court may only review those District Court orders that were properly appealed. In the case at bar, only the summary judgment order of February 29, 2000 was properly appealed to this court. Accordingly, we cannot consider the April 24, 2000 denial of (1) Greentree's 59(e) motion or (2) Greentree's motion for summary judgment.[8]

### B. Contractual Time Bar

■ Greentree argues that the bill of lading issued by American President Lines governing the shipment of cigarettes from Atlanta to Tokyo included a one-year limitation for suits brought in tort or in contract. Greentree is barred from raising this issue now. Greentree first raised this issue in its 59(e) motion; but that motion was filed on March 10, 2000, ten days after the February 29, 2000 grant of summary judgment in favor of Union Pacific, and therefore, we are without authority to consider the issue.[9]

### C. Genuine Issues of Material Fact

Greentree contends that two issues of material fact–whether the Atlanta–to–Tokyo bill of lading issued by American President Lines was the operative contract and whether Saunders had authority to leave the trailer unattended–were presented to,

---

**8.** In its reply brief, Greentree represents that it mistakenly believed that it did not need to amend its notice of appeal to include the denial of its 59(e) motion and motion for summary judgment. Greentree also points out that it put both this court and Union Pacific on notice of all the issues it intended to raise on appeal. Indeed, on April 17, 2000, Greentree filed a Concise Summary of Case with this court, which included a list of issues that it intended to raise. Nevertheless, the Rules of Appellate Procedure clearly mandate an amended notice of appeal:

A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A) [including a motion "to alter or amend the judgment under Rule 59" of the Fed. R. Civ. Pro.], or a judgment altered or amended upon such a motion, must file a notice of appeal, or an amended notice of appeal–in compliance with Rule 3(c)–within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

R. App. Pro. 4(a)(4)(B)(ii). Because Greentree filed a notice of appeal only with respect to the February 24, 2000 order entering summary judgment for Union Pacific, only that order can be considered.

**9.** In its memorandum denying Greentree's 59(e) motion and motion for summary judgment, the District Court found that it could not properly consider Greentree's new argument that a contractual time limit barred Union Pacific's action because the document assertedly evidencing such time limit–the bill of lading issued by American President Lines–was not "new evidence." The bill of lading was produced by Union Pacific, along with other documents, in April 1999, long before the District Court's February 29, 2000 grant of summary judgment in favor of Union Pacific. Mem. Op. at 7 (W.D.Pa. Apr. 24, 2000).

and ignored by, the District Court. Both of these issues were raised by Greentree before the District Court entered summary judgment for Union Pacific and are therefore properly before this court.[10]

First, Greentree argues that the question whether the Atlanta–to–Tokyo bill of lading was a through bill of lading presents a genuine issue of material fact because a finding that it was a through bill of lading would make Union Pacific "a carrier and not a shipper." While the existence, or non-existence, of a through bill of lading is ordinarily an issue of fact, *see, e.g., Marine Office of America Corp. v. NYK Lines*, 638 F.Supp. 393, 399 (N.D.Ill.1985), it is beside the point in this case. Even if the Atlanta–to–Tokyo bill of lading is deemed a through bill of lading, that designation would not affect the controversy between Union Pacific and Greentree. As discussed *supra*, Union Pacific entered into a new contract with Greentree–and this new contract constituted the operative document in the dealings between Greentree and Union Pacific. Greentree was not a participant in the Atlanta–to–Tokyo bill of lading and therefore cannot rely on Union Pacific's status as an intermediate carrier under that bill of lading to avoid liability under the Union Pacific–Greentree contract.

Second, Greentree maintains that there is a material issue of fact as to whether Greentree, acting through Saunders, had authority to leave unattended the trailer that was stolen. Union Pacific did not, however, deny that Greentree was authorized to leave the trailer *unattended;* it was Union Pacific's position that Greentree did not have authorization to leave the

trailer *unsecured.* As the District Court pointed out in its memorandum granting summary judgment to Union Pacific, "Greentree fails to cite any case in which a carrier was relieved from Carmack Amendment liability because a shipper knew that the freight would sit unattended for a brief period of time." In light of the Supreme Court's teachings with respect to the Carmack Amendment, it is not surprising that Greentree was unable to cite any helpful case law:

> It is settled that this statute has two undisputed effects crucial to the issue in this case: First, the statute codifies the common-law rule that a carrier, though not an absolute insurer, is liable for damage to goods transported by it unless it can show that the damage was caused by (a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods. Second, the statute declares unlawful and void any rule, regulation, or other limitation of any character whatsoever purporting to limit this liability. Accordingly, under federal law, in an action to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages. Thereupon, the burden of proof is upon the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability.

*Missouri P.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137–38, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964) (quotations, citations, and foot-

---

**10.** Union Pacific is mistaken in its contention that the argument relating to the Atlanta–to–Tokyo bill of lading was first raised in Greentree's 59(e) motion. Greentree first raised this issue in its supplemental memorandum of

law in opposition to Union Pacific's motion for summary judgment. This supplemental memorandum was submitted to the District Court almost three months before summary judgment was entered.

notes omitted). The District Court found "that Greentree has failed to present any evidence that it was free from negligence and that the loss was due to an exempted defense." Mem. Op. at 8 (W.D.Pa. Feb. 29, 2000). We agree. Whether Greentree was authorized to leave the trailer unattended was therefore not a genuine issue of material fact.

## V. Conclusion

For the foregoing reasons, the judgment of the District Court will be affirmed.