

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-22-2003

# Allstate Ins Co v. Sheridan

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4222

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Allstate Ins Co v. Sheridan" (2003). *2003 Decisions.* Paper 40.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/40

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-4222

ALLSTATE INSURANCE COMPANY

v.

ROBERT SHERIDAN; EDWARD COLE;
SHIRLEY COLE; THE BLOOMSBURG HOSPITAL;
LUZERNE-WYOMING CENTER #1,
t/a Community Counseling Center of
Northeastern Pennsylvania

The Bloomsburg Hospital,

Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 00-cv-01381)
District Judge: Honorable John E. Jones, III

Submitted Under Third Circuit LAR 34.1(a)
December 12, 2003

Before: AMBRO, FUENTES and GARTH, Circuit Judges

(Opinion filed : December 22, 2003)

OPINION

AMBRO, Circuit Judge

Bloomsburg Hospital appeals the District Court's award of summary judgment to Allstate Insurance Company on its action for declaratory judgment. Allstate sought a declaration that it is not obligated to defend or indemnify Robert Sheridan, named as a defendant in a Pennsylvania state court civil action, for claims arising out of a shooting incident in Bloomsburg, Pennsylvania. The District Court interpreted Sheridan's Renters Insurance Policy ("Policy") to exclude coverage for the conduct at issue and concluded that neither Sheridan nor other parties to the action may seek indemnification or contribution from Allstate. Because the Policy, by its plain language, does not cover intentional acts committed by insured persons, we affirm.

## I. Factual and Procedural History

This federal action involves Allstate's purported obligation to defend or indemnify Robert Sheridan in an underlying state court action arising from an incident that occurred on March 24, 1998. That afternoon Edward Cole was in his car, stopped in traffic, outside of Sheridan's apartment. Sheridan shot Cole, through the window of his apartment, with a 20-gauge shotgun. Cole sustained personal injuries as a result of the shooting.

Prior to the incident, Sheridan was treated at Bloomsburg Hospital for psychiatric or psychological illnesses. Upon his discharge, Sheridan received from the Hospital instructions for out-patient medical care, as well as drug prescriptions. He failed to

follow these instructions and began to self-medicate. In the state court action, Cole has

alleged that the Hospital's careless, reckless, or negligent failure to render appropriate

professional mental health care to Sheridan increased the risk of harm to Cole. The

Hospital denies liability for the shooting. In the alternative, it contends that any finding

of liability against the Hospital would entitle it to contribution or indemnification from

Sheridan. It further argues that Sheridan's failure to comply with his discharge

instructions and his practice of self-medication constitute negligent conduct that is

covered by his insurance policy.

The Allstate Renters Insurance Policy provides:

> Subject to the terms, conditions, and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

An "occurrence," as defined by the Policy, is "an accident including continuous or

repeated exposure to substantially the same general harmful conditions, during the policy

period, resulting in **bodily injury** or **property damage**."

The Policy specifically excludes from coverage all damage resulting from

intentional conduct.

> **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
>
> a) such **insured** person lacks the mental capacity to govern his or her own

3

conduct;

b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or

c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such **insured person** is actually charged with or convicted of a crime.

In June 2000 Sheridan pled guilty but mentally ill to one count of Aggravated Assault and two counts of Recklessly Endangering Another Person. He admits to having "shot at the individual in the car" and "aim[ed] at the driver."

Sheridan is a named defendant in a civil action pending in the Court of Common Pleas of Columbia County, Pennsylvania. Allstate filed this action in the United States District Court for the Middle District of Pennsylvania, seeking a declaration that it is not obligated to indemnify Sheridan in the underlying state action. The District Court granted Allstate's motion for summary judgment in October 2002. Bloomsburg Hospital appeals.

The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1332, based on diversity of citizenship and amount in controversy. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review *de novo* the District Court's award of summary judgment.[1]

---

[1]"Summary judgment is appropriate when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' While the record on appeal must be viewed in the light most favorable to the party who lost on summary judgment in the District Court, an appellate court may only review the record as

4

*Union Pacific R. Co. v. Greentree Transp. Trucking Co.*, 293 F.3d 120, 125-26 (3d Cir. 2002).

## II. Discussion

The disagreement between the parties in this case turns on a logic game. It is undisputed that Sheridan's act of shooting Cole was intentional within the meaning of the Policy. It necessarily follows that Allstate is not obligated to indemnify Sheridan for liability he incurs as a result of his act of shooting Cole; by the express terms of the policy, Sheridan's purported lack of mental capacity at the time of the shooting is irrelevant.[2]

In an attempt to avoid this result, the Hospital cleverly suggests that Allstate is liable based on Sheridan's "negligent" failure to comply with his discharge instructions. In other words, the Hospital contends that Allstate may be exempt from financial responsibility for damages that stem from the *shooting* but nonetheless liable for the same damages to the extent they may be traced to Sheridan's prior act of disregarding the

---

it existed at the time summary judgment was entered." *Union Pac. R.R. Co. v. Greentree Transp. Trucking Co.*, 293 F.3d 120, 125-26 (3d Cir. 2002) (citations omitted).

[2] The standard for interpreting the Policy under Pennsylvania law is well-established. The terms of the Policy are to be given their ordinary meaning. While ambiguous terms are construed against the insurer, a term will be considered ambiguous only if reasonably intelligent persons would "honestly" differ as to its meaning, when considering it in the context of the entire policy. Finally, in determining the parties' intent, the court must consider not only the language of the Policy, but also the surrounding circumstances. *United Servs. Auto Ass'n v. Ellitzky*, 517 A.2d 982, 986 (Pa. Super. 1986).

Hospital's instructions.

While we appreciate the Hospital's ingenuity, we decline to deprive Allstate of the benefit of its bargain in this fashion. The plain language of the Policy absolves Allstate of responsibility for intentional acts, such as the shooting at issue in this case, even when the insured lacks mental capacity or injures an unintended victim. We will not permit the Hospital to end-run this exclusion by identifying an attenuated, albeit potentially proximate, cause of Cole's injury. After all, every insurance policy is susceptible to circumvention of this kind. An insured held liable for an intentional injury might argue, by similar reasoning, that he or she negligently failed to *seek* psychological treatment.

We need not, however, rest on policy considerations. The Hospital's argument suffers from a fatal logical infirmity. To be sure, the state court complaint against Bloosmburg is premised on the Hospital's allegedly negligent dissemination of medical treatment. The District Court noted that the parties did not dispute "that Sheridan not only failed to adhere to the Bloomsburg Hospital's discharge instructions, but also began to self-medicate subsequent to his release from the hospital." The Hospital concludes therefrom that the parties agree that Sheridan *negligently* failed to follow the instructions of his treating healthcare providers.

This step we cannot make. The Hospital's allegedly negligent failure to supervise Sheridan does not render Sheridan's disruption of his treatment also negligent. Put simply, the Hospital may be correct that "the trial court in the underlying civil action has

6

already held that Edward and Shirley Cole have stated a claim for injuries against the Bloomsburg Hospital that is not based on intentional and/or criminal acts." It does not follow, however, that the Hospital's entitlement to indemnification from Sheridan is *also* based on negligence—nor that Allstate is thereby required to indemnify Sheridan.

The Hospital's strongest theory for pursuing indemnification from Sheridan is his intervening act of shooting Cole. Less likely, but nonetheless plausible, is Sheridan's failure to follow his medical regimen. There is no indication that either act was anything but intentional, as that term is defined in the Policy. The Hospital admits that the shooting was intentional and, consequently, that Allstate need not reimburse Sheridan for the resulting damages. But the Hospital's alternative strategy suffers from the same defect. While Sheridan may not have been acting with full mental capacity when he chose to self-medicate, the intentional act exclusion "applies even if [the insured] lacks the mental capacity to govern his or her own conduct." Sheridan did not self-medicate by accident. *Cf. Allstate Ins. Co. v. Fischer*, No. 97-4806, 1998 WL 205693, at *3 (E.D. Pa. Apr. 28, 1998) (defining accident as a "fortuitous, untoward or unexpected happening[]."). There is no indication in this case that Sheridan acted in any way but intentionally, within the meaning of the Policy, when he discontinued his prescribed treatment. *Cf. Acceptance Ins. Co. v. Seybert*, 757 A.2d 380, 383 (Pa. Super. 2000).

### III. Conclusion

Sheridan's Policy specifically excludes from coverage liability for damage resulting from intentional acts by the insured.  Because we find that Sheridan acted intentionally (as the Policy defines that term) both when he began to self-medicate and when he shot Cole, we affirm the judgment of the District Court.

_____

TO THE CLERK:

Please file the foregoing Opinion.

By the Court,


/s/ Thomas L. Ambro
Circuit Judge