**ALLENTON BROWNE, Defendant/Petitioner on Review**

**v.**

**LAURA L.Y. GORE, Plaintiff/Respondent on Review**

Case No. SX-10-CV-155

Superior Court of the Virgin Islands

Division of St. Croix

January 28, 2011

NATALIE NELSON TANG HOW, ESQ., Law Offices of Natalie Nelson, PLLC, Christiansted, St. Croix, USVI, *For the Defendant*.

 

LAURA L.Y. GORE, Lithonia, GA, *Pro se*, *Plaintiff*

DONOHUE, SR., *Presiding Judge*

## MEMORANDUM OPINION

(January 28, 2011)

**BEFORE THE COURT** is a Petition for Review[1] of an Order of the Magistrate granting a Writ of Restitution to Respondent Laura L.Y. Gore, thereby evicting Petitioner Allenton Browne from Gore's property. Browne argues on appeal that the Magistrate erred in granting the writ and then erred by not staying his eviction because he had entered into an oral agreement with Gore to purchase her property. Therefore, she should not be allowed to evict him. This matter is properly before the Court for consideration of Browne's appeal. For the reasons stated below, the Court will affirm the Order of the Magistrate.

## I. FACTS

Gore is the owner of real property located at No. 85 Estate Catherine's Rest, St. Croix, U.S. Virgin Islands. For over a decade, Browne lived at No. 85, renting Gore's house. He "initially rented the residence approximately thirteen (13) years ago pursuant to a yearly lease agreement . . . . [but that] lease Agreement has since expired . . . on or about 2006 . . . ." (*See* Browne Aff. 1, Ex. 2, Def. Emergency Mot., filed July 27, 2010.) Once his lease ended in 2006, Browne claims he and Gore agreed orally that he would purchase her property. *Id.*

Gore disputes that claim. According to her, Browne's most-recent lease agreement terminated in March 2009, not three years earlier. (*See*, e.g., Compl. at Attachment ("Residential Lease Renewal"), filed Apr. 9,

---

[1] Pursuant to Title 4, Section 79(a) of the Virgin Islands Code, the Superior Court of the Virgin Islands created an Appellate Division responsible for administering all appeals. (*See In Re Order Amend. R. Governing Review of Magistrate Decisions*, SX-10-MC-30, entered Nov. 23, 2010.) Pursuant to the Court's rule-making authority, the Superior Court of the Virgin Islands adopted Superior Court Rule 322, establishing procedures for review of decisions of the Magistrate Division. Pursuant to Rule 322.1(b), an appeal of a magistrate's decision is titled "Petition for Review." *See also* SUPER. CT. R. 322(b)(1). Thus, the Court will refer to Browne's "Notice of Appeal" accordingly.

2010.[2]) Since Browne remained on the property without an active lease, Gore treated him as a holdover tenant in a month-to-month tenancy. (*See generally* Compl.) When Browne's failure to timely pay his rent began causing Gore significant financial hardship, she decided to terminate his tenancy. When Browne refused to vacate the property despite two notices to quit, Gore then commenced this action to have him evicted.

Initially hearing on this matter was scheduled for April 27, 2010. Only Gore appeared, however. Browne had not yet been served.[3] (R. of Proceedings, filed Apr. 27, 2010.) The Court rescheduled the hearing for May 11, 2010. On May 11th, however, only Browne appeared. The Court rescheduled the hearing once again, until July 20, 2010. (R. of Proceedings, filed May 11, 2010. *See also* Letter from Resp. to Magistrate (May 5, 2010), filed May 5, 2010 (noting her absence and requesting hearing date in July).) On July 20th, again only one party appeared, Gore. (*See generally* Order, entered July 22, 2010 (hereinafter "Eviction Order")) Because Browne had received notice of the July 20th court date when he appeared in court on May 11th, the Magistrate allowed the hearing to proceed despite his absence.

At the July 20th hearing, Gore testified and submitted proof of the notices to quit she sent Browne. Based on her testimony, the evidence submitted, and Browne's failure to appear, the Magistrate granted judgment in Gore's favor and issued a writ of restitution evicting Browne. (R. of Proceeding, filed July 20, 2010.) Later that day, Browne telephoned

---

[2] Two copies of the final lease were submitted below. The initial copy, attached to the Complaint, is unexecuted by Browne or Gore or by the witness referenced therein. Gore subsequently provided a second copy for the hearing scheduled for May 11, 2010. (*See* Letter from Resp. to Magistrate (May 11, 2010) at Attachment #1 ("Residential Lease Renewal"), filed May 11, 2010.) The second copy differs from the first in that the formatting of the second copy resulted in it printing on three-pages whereas the first copy is only two pages. Additionally, the second copy now includes Gore's signature. It remains unexecuted by Browne or the witness, thus calling the validity of that final lease into question. Nevertheless, the question of the date when the Parties' final lease agreement expired is not before this Court as it was uncontested below that at the time of this dispute there was no lease agreement in effect and that the relationship between Gore and Browne was that of a landlord and a tenant.

[3] According to the record of proceeding prepared by the court clerk, "the Court informed [Gore] that [Browne] was not served." (R. of Proceeding, filed Apr. 27, 2010.) The court file concurs: Browne was not served until May 5, 2010. (See Return of Serv., filed May 5, 2010.) Somehow, however, Browne had notice of the first court date because he sent a letter, dated April 27, 2010, to the Magistrate requesting a continuance because he was off-island at the time. (Letter from Pet. to Magistrate (Apr. 27, 2010), filed Apr. 27, 2010.)

the court to inform the Magistrate that an emergency prevented his appearance. (Eviction Order 1.) Therefore, when both Browne and Gore appeared in court the next day on Gore's small-claims matter against Browne, the Magistrate put this matter on for a fourth time.

■ At the July 21st hearing, both Gore and Browne testified. Gore submitted additional documentation. *Id.* Browne did not submit any documentation. Browne disputed that Gore had served him with a notice to quit.[4] After hearing the testimony, reviewing Gore's documentation, and finding Gore more credible, the Magistrate found that Browne "was served with at least thirty (30) days notice of [Gore's] intent to pursue his eviction from the premises and to quit."[5] *Id.* at 1-2. Accordingly, having found notice proper and Browne still in possession of the property, the Magistrate affirmed the writ of restitution she granted the day before.

After failing to succeed at the hearing below, Browne retained counsel who appeared on his behalf and moved for an emergency stay of his eviction and for reconsideration. (Def. Mot. for Reconsideration, filed Aug. 2, 2010; Def. Emergency Mot. for Stay of Execution, filed July 27, 2010.) In his emergency motion, Browne asserted that he had evidence

---

[4] According to the record, Gore served Browne with at least one and possibly two notices to quit: first on February 12, 2010 and then again on March 9, 2010. The Court notes that both notices appear to be originals, i.e., printed in color or with signatures seemingly in ink, thus begging the question whether they were, in fact, ever served upon Browne. (*See* Pl. Tr. Ex. 2 (Letter from Resp. to Pet. (Feb. 12, 2010)), admitted July 20, 2010, and Pl. Tr. Ex. 3 (Letter from Resp. to Pet. (Mar. 9, 2010), admitted July 20, 2010.) Similarly, the record does not reflect proof of mailing such as certified mail receipts, return receipts, or similar postal tracking data reflecting delivery or delivery attempts upon Browne. In fact, Gore's Trial Exhibit Six is a returned envelope with the words "Return to Sender" written across it as well as a stamp by the U.S. Post Office stating "Returned to Sender: Refused Kingshill VI 00950-9998." (Pl. Tr. Ex. 6 (Envelope mailed by Resp. to Pet., postmarked Feb. 13, 2010), admitted July 20, 2010.) Thus, Exhibit Six could support Browne's assertion that the notice to quit was never received but it could also refute that point if Browne, in fact, refused to accept delivery. The Magistrate heard testimony on this point and found that Browne was properly served with at least one notice to quit. (Eviction Order 1-2.) Moreover, Browne has not challenged on appeal the adequacy of the notices. "It is well established that failure to raise an issue in the [trial] court constitutes a waiver of the argument on appeal." *V.I. Port Auth. v. Joseph,* 49 V.I. 424, 428 (2008) (citation omitted). Thus, for purposes of this Petition, the Court leaves undisturbed the findings of the Magistrate as to this issue.

[5] Exactly thirty-two days elapsed between the date on Gore's March 9th eviction notice and the commencement of this action. (Pl. Tr. Ex. 3, (Mar. 9, 2010), admitted July 20, 2010; Compl., filed April 9, 2010.) Service did not occur until May 5, 2010. (Summons & Ret. of Serv., filed May 5, 2010.) As Browne did not challenge this finding of the Magistrate, the Court finds that this FED action was properly commenced.

200

proving an oral agreement with Gore to buy her property. (Def. Emergency Mot. 2 ("Evidence exists to support Defendant Browne's position that on or about 2006, the parties entered into an oral agreement for purchase of the property by Defendant Browne.")). Gore should therefore be estopped from evicting him. *Id.* ("[Gore] cannot be allowed the benefit of accepting payments towards the purchase of the property thereby depriving [Browne] of the opportunity to retain possession and enjoy title to the subject property. Such inequity will result in unjust enrichment . . ."). In support of the alleged oral agreement, Browne submitted his own affidavit and a photocopy of a bank wire transfer he sent Gore in May 2010. (Def. Emergency Mot., Ex. 1 ("First Bank Transfer Application") (May 6, 2010) & Ex. 2 ("Browne Aff."), filed July 27, 2010.) Browne also asserted that improvements he made to, and overall maintenance of, the property showed his reliance upon an oral agreement with Gore.

In deciding Browne's emergency motion, the Magistrate noted a lack of "authority . . . in the motion for the relief sought."[6] (Order 1, entered Aug. 3, 2010 ("Reconsideration Order").) Accordingly, the Magistrate construed the emergency motion as a motion for relief from judgment pursuant to Rule 60 of the Federal Rules of Civil Procedure. Rule 60 directs a court to consider, *inter alia*, "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." FED. R. CIV. P. 60(b)(2). The Court may also grant relief from judgment based on "any other reason that justifies relief." *Id.* at R. 60(b)(6). While not so delineated, Browne's emergency motion rested on both bases: newly discovered evidence and equitable grounds for relief. After considering Browne's arguments and the documents he submitted, and reconsidering the initial findings of fact, the Magistrate concluded that Gore's testimony at the hearing disputed Browne's *post hoc* claims and accordingly denied Browne an emergency stay and affirmed the writ of restitution. This appeal followed.

---

[6] The Magistrate did not expressly rule on Browne's Motion for Reconsideration, filed the day before entry of the Reconsideration Order. In denying emergency relief, however, the Magistrate did consider Browne's claims of an equitable interest in the property and therefore effectively reconsidered her earlier decision, thus mooting the need to address the Motion for Reconsideration directly. Moreover, Browne filed notice of appeal on August 5, 2010, only three days after filing his Motion for Reconsideration.

## II. STANDARD OF REVIEW

The ambit of the original jurisdiction vested in the Magistrate Division of the Superior Court of the Virgin Islands encompasses, *inter alia*, disputes between landlords and tenants, including eviction proceedings. V.I. CODE ANN. tit. 4 § 123(a)(6) (Supp. 2010). The party seeking review of a magistrate's decision must file a petition for review within ten days of entry of the order sought to be reviewed. SUPER. CT. R. 322.1(b)(2)(A). Expiration of the time allotted finalizes the judgment of the magistrate. SUPER. CT. R. 322.1(c). Review of a decision entered in a matter within the original jurisdiction of a magistrate comes in the first instance before a judge of the Superior Court of the Virgin Islands. *See generally H&H Avionics. Inc. v. V.I. Port. Auth.*, 52 V.I. 458 (2009); SUPER. CT. R. 322.

Sitting in an appellate capacity, the Superior Court judge conducts a two-part review of the magistrate's decision. First, factual findings are reviewed for clear error. SUPER. CT. R. 322.3(b)(1). The judge must accept the facts as found by the magistrate unless the findings are "completely devoid of minimum evidentiary support displaying some hue of credibility . . . ." *St. Thomas-St. John Bd. of Elec. v. Daniel*, 49 V.I. 322, 329 (2007) (quoting *Haines v. Liggett Group. Inc.*, 975 F. 2d 81,91-92 (3d Cir. 1992)). Factual finding are clearly erroneous only if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948). If "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 574, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985). Thus, the court may not "reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule [322] if it undertakes to duplicate the role of the lower court." *Id.* at 573.

Second, legal conclusions of the magistrate are subject to plenary review. SUPER. CT. R. 322.3(b)(2). " 'Plenary' means 'full; complete; entire,' and with the power to conduct plenary review goes the responsibility to conduct it. The [court] must provide sufficient analysis to demonstrate that it has truly performed a full review of the record, including the evidence." *Huang v. Attorney General of the United States*,

620 F.3d 372, 388 (3d Cir. 2010) (quoting BLACK'S LAW DICTIONARY 1273 (9th ed. 2009)). Occasionally, as here, an appeal involves "a mixed question of law and fact in which the legal operation of words is intertwined with their interpretation. When that occurs, the reviewing court should separate the issue into its respective parts, applying the clearly erroneous test to the factual component, the plenary standard to the legal." *Ram Constr. Co., Inc. v. Am. States Ins. Co.*, 749 F.2d 1049, 1053 (3d Cir. 1984). In matters as here involving an alleged oral agreement, "special deference is due the factfinder's ability to make credibility assessments. However, just as with a written agreement, construction of the legal effect of an oral contract involves a determination of law subject to plenary review on appeal." *Id.* at 1053 (citation omitted).

## III. DISCUSSION

■ Gore initiated this proceeding under the Virgin Island's forcible entry and detainer ("FED") statute. (Compl., filed Apr. 9, 2010.) An FED proceeding is appropriate where, *inter alia*, "the tenant or person in possession . . . fails . . . to pay any rent due on the lease or agreement under which he holds, or deliver up the possession of the premises for three days after demand made . . . ." V.I. CODE ANN. tit. 28 § 789(a)(1) (1996). Such persons are deemed to be "unlawfully holding [the property] by force." *Id.* § 789(a). "Where a tenant is retaining possession by force, relief is available in a summary FED proceeding *only if* there 'is an undisputed oral or written lease agreement, and rent is due or owing thereon; or [t]here is an undisputed oral or written lease which has expired.' " *C.M.L., Inc. v. Dunagan*, 904 F.2d 189, 191 (3d. Cir. 1990) (alteration in original) (emphasis added) (quoting *Inter. Car Corp v. Discount Car Rental*, 21 V.I. 157, 159 (Terr. Ct. 1984)). Notice to quit must be given before an FED action will lie, however. V.I. CODE ANN. tit. 28, §§ 752, 789(a)(2) (1996). When the tenancy is month-to-month, "notice shall be sufficient if it is equal to the interval between the times of payment." *Id.* § 752. A landlord must wait an additional three days after giving notice before a tenant is considered to be "unlawfully holding by force." *Id.* § 789(a)(1). Thus, in total a landlord must wait thirty-three days after serving notice before she can commence an FED action against a month-to-month tenant.

██ Neither Gore nor Browne dispute that Gore still owns the real property at issue herein. Likewise, neither Gore nor Browne dispute that Browne is still in possession of that property. Neither Gore nor Browne dispute that a written lease between them expired some time ago. Browne disputed receiving notice to quit, but the Magistrate found notice proper and Browne did not challenge that finding on appeal. Therefore, this matter was properly commenced as a FED proceeding. Whether the Magistrate correctly retained jurisdiction over this matter instead of converting it into a civil action is, in part, the question on appeal as the legal status of the Parties was disputed. Browne claims to be, in essence, a quasi-mortgagee to Gore, having orally agreed to purchase her property. He does not claim to already own the property outright, instead that he agreed to purchase it and is still making payments. Gore maintains that Browne is and has always been her tenant. As Browne presented on appeal the same arguments raised in his emergency motion below, and as the Magistrate already found against him on those bases, the question before the Court is not whether Browne actually has an equitable interest in Gore's real property — a factual determination this Court cannot make — nor whether Gore should be estopped from evicting him — a legal conclusion arrived at by the trier of fact based on the evidence — but rather the question on appeal is whether the Magistrate correctly concluded that Browne failed to show sufficient evidence of a right to possession mandating conversion of this FED proceeding into a civil action. Upon reviewing the entire record in this matter,[7] the Court cannot

---

[7] On appeal, both Parties filed documents not initially considered below. (*See, e.g.*, Browne Aff. 2, Pet. Mot. to Waive Supersedeas Bond, filed Sept. 29, 2010 ("I am making good faith efforts to secure the funds to be held in escrow as payment for the subject property"); Letter from Resp. to Magistrate 1 (Sept. 7, 2010), filed Sept. 9, 2010 ("During the proceedings when you inquired if there was any negotiations for Mr. Browne to purchase the property my response was 'no' because that was based on the facts at the time . . . . I honestly did not think of Mr. Browne's recent interest in purchasing the property as a legitimate endeavor . . . .").) Initially the Court considered remanding this matter to the Magistrate to determine whether the record needed to be supplemented. Upon further examination, however, the Court realized that Browne submitted on appeal the same documents attached below to his emergency motion. Thus Browne's documentation was before the Magistrate and considered by her and therefore reviewable on appeal. Gore remained *pro se* through the court of litigation. Accordingly, strict adherence to procedural rules is discouraged. *See, e.g.*, *McNeil v. United States*, 508 U.S. 106, 113, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1980). Appellate procedure may not be dispensed with entirely, however, even with *pro se* litigants. As with Browne, however, most of what Gore submitted on appeal accords with attempts at briefing this matter for the

conclude that facts found by the Magistrate are clearly erroneous or that the legal conclusions arrived at are incorrect.

■ "FED complaints are summary actions to determine rights of peaceable possession of real property." *Estate of Thomas Mall. Inc. v. Terr. Ct. of the V.I.*, 923 F.2d 258, 264 (3d Cir. 1991). Their scope is "very limited." *Id.* As such, they "must be strictly followed and narrowly construed." *Suarez v. Christian*, 18 V.I. 581 (D.V.I. App. Div. 1981). "As soon as a defendant in possession in an FED action raises a *colorable defense* requiring construction of an agreement between the property owner and the party in possession, an FED action will not lie." *Estate of Thomas Mall*, 923 F.2d at 264 (emphasis added) (citing *Iron Mtn & H.R. Co. v. Johnson*, 119 U.S. 608, 612, 7 S. Ct. 339, 30 L. Ed. 504 (1887)). If properly raised below, a magistrate could not, for example, consider within an FED action "(a) an adjudication of title or (b) the right to possession; nor can the [magistrate] adjudicate a right of possession that depends on an equitable interest in the premises [] or inquire into equitable rights and give relief to which the party might be entitled in equity." *C.M.L. Inc.*, 904 F.2d at 191 (quoting *Inter. Car Corp.*, 21 V.I. at 159 (final alteration in original)). "[T]he value of the summary action would be destroyed were issues unrelated to possession allowed to slow the suit." *Suarez*, 18 V.I. at 590.

■ While the party asserting an equitable defense in an FED proceeding should move to convert the matter into a civil action, something Browne did not do, the magistrate may also *sua sponte* convert an FED proceeding into a civil action when necessary as part of the court's duty to do substantial justice particularly in matters involving *pro se* litigants. But the magistrate is not obligated to convert the matter immediately upon the assertion of an equitable argument. "[J]urisdiction of a [FED] proceeding is not, apart from statute, ousted by *a mere averment* in a defendant's pleading[,] statement or argument[,] of ownership of the land, or that a question of title, legal or equitable, is

---

Court and the Court construes them as such. Additional exhibits or attachments Gore filed have not been and may not be considered. Courts sitting on appeal "may only review the record as it existed at the time [the] judgment was entered. . . . [and] consider only those papers that were before the [lower] court. The parties cannot add exhibits, depositions, or affidavits to support their position. Nor can they advance new theories or raise new issues in order to secure a reversal of the lower court's determination." *Union Pac. R.R. Co. v. Greentree Transp. Trucking Co.*, 293 F.3d 120, 126 (3d Cir. 2002) (citation omitted).

involved. The [magistrate] may proceed until it appears that the question involved is in fact one of title or *a complicated case of the right to possession." V.I. Port Auth. v. Joseph*, 49 V.I. 424, 430-31 (2008) (emphasis added) (quoting *C.M.L., Inc.*, 904 F.2d at 191). It is "the [magistrate], and not the defendant, [who] must make this finding in fairness to both parties." *Inter. Car Corp.*, 21 V.I. at 159. "To amplify, the [magistrate] is duty-bound to proceed with the evidence until . . . the defendant advancers] *sufficient* evidence to create a bona fide question as to the existence" of a complicated case of the right to possession. *V.I. Port Auth*, 49 V.I. at 431 (emphasis added) (quoting *C.M.L. Inc.*, 904 F.2d at 191).

■ Here Browne claimed to have entered into an oral agreement with Gore to purchase her property. As the Magistrate noted below, oral contracts for the sale of real property are generally void by application of the statute of frauds. (Reconsideration Order 2 n.2). *See also* V.I. CODE ANN. tit. 28 § 241 (1996). In very few instances, however, "[t]he doctrine of part performance is an equitable defense that was established as a means of preventing inequity to a person who, by either inducement or acquiescence, was permitted to rely upon an oral agreement which normally would be void under the statute of frauds." *Jackman v. Estate of Pitterson*, 50 V.I. 485, 493 (D.V.I. App. Div. 2008). It "removes the statute of frauds from the case because it would be intolerable in equity for the owner of land to knowingly allow another to invest time, labor and money in that land upon the faith of a contract that did not exist." *Id.* "In order to enforce a verbal agreement on the grounds of part performance, the evidence presented must be clear and definite in both the terms and the subject matter of the contract." *Id.* The burden is on the party alleging the existence of an oral agreement to "show such acts and conduct of the [other party] which amount to a representation that the [other party] proposed to honor the oral agreement and not avail himself to the Statute of Frauds in order to escape its performance." *Id.* at 493 n. 19 (citation omitted).

■ In fully reviewing the record here, the Court does acknowledge that at first glance Browne's bank wire transfer appears to lean in his favor. The instruction on the wire transfer states: "Payment on House Purchase #85 Catherines [sic] Rest." (*See* Def. Emergency Mot., at Ex. 1.) The bank transfer Browne attached to his emergency motion was not admitted at the hearing, but the transaction reflected therein was discussed below.

206

(*See* Reconsideration Order 2 n.1.) The Magistrate noted that "[w]hile Mr. Browne argued [at the hearing that] he made a $3,000 payment in May 2010 to [Gore], he never argued it constituted performance, substantial or otherwise, toward the alleged purchase/sale agreement." (Reconsideration Order 2.) If the Parties had reached an oral agreement in 2006, as Browne claims, he should have been able to provide the Magistrate with more than a one-page document dated approximately four years after the purported agreement. Even viewing this document in the light most favorable to Browne, one wire transfer for three-thousand dollars cannot constitute clear and definite evidence tending to prove the existence of an oral agreement to purchase real estate Browne himself valued at $120,000.00. (Def. Emergency Mot., Ex. 2 at 2 ("Browne Aff.") ("the purchase price we agreed on was approximately one hundred and twenty thousand dollars ($120,000.00) . . . .").) The Magistrate's finding that this payment constituted rent and not a payment on real estate was not clearly erroneous.

 Likewise the Court also cannot conclude that the Magistrate was clearly erroneous in disbelieving Browne's assertion that his maintenance and improvement of the property demonstrated his reliance upon an oral agreement. The Magistrate noted that

> [w]hile [Gore] argued that Mr. Browne built a wall around the property without her permission and without a lawful permit, Mr. Browne never stated he built the wall in reliance upon any agreement to purchase/sell the property. In fact, Mr. Browne never addressed the issue of the wall during the hearing and after it was raised by [Gore]. He also never stated he made any improvements to the property, either interior or exterior. He certainly produced no evidence of the same. The claim he made improvements in reliance upon the parties' alleged agreement is being raised in the motion for emergency relief for the first time.

*Id.* at 2-3. Routine maintenance and upkeep cannot by itself constitute clear and definite evidence tending to prove the existence of an oral agreement to purchase real property. While the changes Browne made to the property might lean in his favor, Gore argued that the improvements were made without her permission. What's more, Browne did not show what maintenance he alleged to have done or what improvements he made beyond his erection of the disputed wall. Assertions alone cannot constitute clear and definite evidence tending to prove the existence of an oral agreement to purchase

207

real property. The Magistrate's finding that Browne's assertion here was merely a *post hoc* attempt to stall his eviction was not clearly erroneous.

■ Lastly, Browne submitted a print-out of an email sent by Gore, copying him.[8] (Def. Reconsideration Mot., Ex. 2.) Here too this document at first glance might raise an eyebrow. Upon closer scrutiny, however, it actually refutes any assertion that Browne and Gore had an oral agreement. In that email, Gore contacts an attorney about legal representation for "Property Sale for #85 Catherine's Rest." *Id.* Gore does not identify a purchaser, however. *Id.* The email does show Gore's interest in selling her property. But Browne would have the court believe that it also shows Gore agreed to sell her property to him. Yet Browne's own arguments foreclose such a finding since his alleged agreement with Gore occurred in 2006, not May 2010, when this email was sent — a discrepancy Browne has not addressed. While both Parties did acknowledge below negotiations between them regarding sale of the property, when those negotiations occurred, how final they were, what the Parties did or did not do in reliance thereon, and whether a meeting of the minds ever occurred are all questions of fact that were weighed and determined below. The Magistrate noted that "Mr. Browne's claim the parties entered into a purchase/sell agreement was disputed by [Gore] *when this matter came on/or a hearing.* Additionally, [Gore] produced documents which disputed this particular assertion of Mr. Browne." (Reconsideration Order 2 (emphasis added).) Thus, by the time the Parties appeared in court at the July 21st hearing any negotiations had fallen through. Negotiations alone cannot entitle prospective real property owners to possession, or to remain in possession. If they could, any renter need only chat casually with his landlord or send an email asking about a purchase price to later forestall an eviction. As with Browne's other documentation, this email cannot constitute clear and definite evidence tending to prove the existence of an oral agreement to purchase real estate.

■ This matter came before the Magistrate Division four times: on April 27, 2010, May 11, 2010, July 20, 2010, and July 21, 2010. Browne

---

[8] The Magistrate did not comment on the email Browne attached to his Motion for Reconsideration. *See also* fn. 6, *supra.* Nonetheless, as Browne filed his reconsideration motion the day before the Magistrate issued her final decision, the Court presumes it was before the Magistrate and thus reviewable on appeal.

had approximately three months from the first court date to prepare his defense. Yet at the hearing he submitted nothing in support of any claim, let alone a complicated one, of his right to possession of Gore's property. Instead, after failing to prevail below, Browne submitted for the Magistrate's review a bank transfer, his own affidavit, and an email. He did not pointed to any acts or conduct of Gore, nor present evidence below, that could lead the court to conclude that the Parties entered into oral agreement for the sale of real property. Instead Browne has tried to show the existence of an oral agreement with Gore through his own acts and conduct. Even when viewed in total, Browne's assertions and documentation do not constitute clear and definite evidence tending to prove the existence of an oral agreement to purchase real estate.

Throughout the FED proceeding and then here on appeal, the burden was on Browne to show sufficient evidence of acts or conduct of *Gore* that would have raised a colorable claim of a complicated question of his right to possession. He did not meet that burden and the Court is not left with the definite and firm conviction that a mistake has been committed. The Magistrate properly retained jurisdiction over this matter as an FED proceeding.

## IV. CONCLUSION

Based upon this Court's thorough review of the entire record herein, the Court concludes that the facts found by the Magistrate are supported by the record and thus are not clearly erroneous. In addition, The legal conclusions the Magistrate reached are correct and supported by this Court's own review of the law. Accordingly, under separate order of even date, Petitioner's Writ of Review will be granted and the Order of the Magistrate affirmed.