CARL W. WILLS, Appellee

v.

WARREN H. YOUNG,

as Ancillary Administrator, C.T.A., of Estate of

CHARLES K. IVES, Deceased,

Appellant

No. 12453

United States Court of Appeals

Third Circuit

Argued January 29, 1958

Decided May 12, 1958

*See, also, 255 F.2d 65*

ARTHUR V. EDULIAN, New York City, *for appellant*

ALMERIC L. CHRISTIAN, Christiansted, St. Croix, Virgin Islands, *for appellee*

Before MARIS, MAGRUDER and STALEY, *Circuit Judges*

STALEY, *Circuit Judge*

Whether a certain description of real property in a con-

tract of sale is sufficiently adequate for equity to decree specific performance is the principal inquiry presented on this appeal.

On May 25, 1954, Charles K. Ives entered into an agreement with Carl W. Wills whereby Ives agreed to sell to Wills a certain tract of land on the Island of St. Croix, Virgin Islands.

Charles K. Ives died on November 14, 1954, before delivering a deed to Wills in accordance with the agreement. Ives devised his entire estate to his son, Colin C. Ives, to whom letters testamentary were issued in Connecticut. Warren H. Young was appointed ancillary administrator c.t.a. in the Virgin Islands.

On January 14, 1956, Carl W. Wills, purchaser under the agreement of sale, instituted in the District Court a suit for specific performance of that agreement. On May 29, 1957, a judgment was entered decreeing specific performance of the contract. This appeal followed.

The land purchase agreement of May 25, 1954, was drafted and typed by a layman and contained the following description:

". . . all that certain piece of land situate in La Grande Princess, particularil designated as follows. Being a part of lot II2 as shown on may dated March 1 3 1947 entitled subdivision map of estates La Grand Princess on the Island, St. Croix. Said par of lot II2A has 100ft. Ocean frontage, Starting at The North East corner of lot II2A then Westerly along Ocean Front for one hundred Ft. the Southerly to the fartheset limit of the lot, and further said purchase is to include a portio of lot 46 being that portion lying directly in the rearof the portion of lot II2A which purchaser is buying and is a part of the one and one half acre purchased from Mrs. Samuel.

"                              *        *        *

"The seller herebyreserves to himself and his successors an easment of thirty fett on the lot II2A as a road."*

■■■■ In an action at law for damages for breach of

*So in original, with respect to all typographical misspellings, etc., in this quoted agreement. — Editors.

contract, the contract need not be completely definite for the court to grant the negative relief sought. In an action in equity for specific performance, however, the contract must be more definite for the chancellor to grant the affirmative relief which the plaintiff seeks. In short, equity can enforce a contract only where it is reasonably certain of the subject matter of its enforcement. This general principle applies to the specific enforcement of agreements relating to the purchase of land. As a condition of the enforcement of such an agreement, the land must be described in the agreement with reasonable particularity. See Annotation, 1952, 23 A.L.R.2d 6. This does not mean that a legal description of the type required in conveyancing is necessary. But it does mean that the land must be identified either by the words of description contained in the contract, or by reference to extrinsic material to which the contract itself refers. Title Guaranty & Surety Co. v. Lippincott, 1916, 252 Pa. 112, 97 Atl. 201, 203. The ever-present problem in cases of this nature is the appropriateness of evidence outside the words of description. Extrinsic evidence is never permitted to supply fatal omissions in the description. It is admissible for the limited purpose of applying the description to the property involved. Suchan v. Swope, 1947, 357 Pa. 16, 53 A.2d 116. This is merely another expression of the equitable maxim that a thing will be considered certain which can be made certain. Many cases have expressed the controlling principles involved here by holding that a description is adequate if it would enable a competent surveyor to find and identify the land with the aid only of the description itself and of proper extrinsic facts referred to in the agreement. See e.g. Bloech v. Hyland Homes Co., 1926, 119 Or. 297, 247 Pac. 761.

It is obvious that in the light of the law as expressed above the description in this case is far too indefinite to be enforced specifically in equity. We arrive at this con-

clusion even after making allowances for the fact that the agreement was drawn by a layman. The description contains too many uncertainties to be adequate. There are two lot numbers enumerated in the description, lot 112 and lot 112A. From the context, it would appear that lot 112A was intended, and appellee so argues. There is reference to a map dated March 13, 1947. This map, however, while it depicts a lot designated 112, has none numbered 112A. Appellee contends that where a description includes a lot number but no reference to a map, the force of local law and custom may infer an implied reference to a map. He further argues that it is clear that the reference here was intended to be to the map dated May 31, 1948, and revised February 1, 1954, which depicted a lot numbered 112A, and not the map dated March 13, 1947. The principle urged may very well be correct where there is only a lot number and no map reference in the description. See Springer v. Kleinsorge, 1884, 83 Mo. 152; Annotation, 23 A.L.R.2d at pages 103-104. Here, however, the map of reference is clearly stated as that dated March 13, 1947, and on that map there is no lot designated as 112A. Proof that the agreement was intended to recite reference to the map revised February 1, 1954, is precisely that type of extrinsic proof which is inadmissible. Specifically, the objectionable aspect is that this extrinsic evidence varying the original agreement is attempting to supply the description instead of applying the description as written to the property involved. Proof of this nature is really a form of admission recognizing the decisive defectiveness of the description in the agreement. No competent surveyor could find the land in question from this agreement or from the references made in it.

Further, even if proper reference were made in the agreement to the map revised February 1, 1954, the description begins a delineation of the property by metes and

bounds, but it fails to continue the line to the place of beginning. The perimeter of the lot is not closed because only two sides are described:

"... Starting at The North East corner of lot II2A then Westerly along Ocean Front for one hundred Ft. the Southerly to the farthest limit of the lot, and further said purchase is to include a portio of lot 46 being that portion lying directly to the rearof the portion of lot II2A which purchaser is buyingand is a part of the one and one half acre purchased from Mrs. Samuel."*

While the line westerly for one hundred feet along the ocean front from the starting point in the lot's northeast corner seems clear enough, the line in the southerly direction to the end of lot 112A, without stating the number of feet it extends or the exact direction, imparts uncertainty to the description. Appellee argues that it is a "fair presumption" that the line was intended to be parallel to the eastern line of lot 112A. Equity does not decree specific performance predicated upon fair presumption or good guesses. More reasonable certainty is required. The line extending in a "southerly" direction might meet the southern boundary of the lot at any number of places and materially affect the size of the lot described. As to which one of these places was intended, we can only surmise, and surmise should not move the chancellor to decree specific performance.

There are two final uncertain aspects in the agreement. Lot 46 appears in the map revised February 1, 1954, as being south of lot 112A. How much of this lot the agreement intended to convey was left to a later survey. While references may be made to aid the questioned description, they must be references to maps or charts in existence, and not maps or charts to be drawn later. Agnew v. Southern Avenue Land Co., 1902, 204 Pa. 192, 53 Atl. 752. The other uncertainty is the location of the 30-foot right

*So in original, with respect to all typographical misspellings, etc., in this quoted description. — Editors.

of way reserved by the seller of lot 112A. The agreement is silent on this subject, and any answer could come only by way of conjecture.

Since the description in the land purchase agreement was so vague and indefinite as to require the denial of specific performance for that reason alone, other points raised by appellant need not be discussed.

The judgment of the District Court will be reversed.