**JAMES JACKMAN, Appellant**
**v.**
**IN THE MATTER OF THE ESTATE OF FELIX PITTERSON, Appellee**

D.C. Civil App. No. 2004/147

District Court of the Virgin Islands

Division of St. Croix, Appellate Division

August 6, 2008

MARTIAL A. WEBSTER, ESQ., St. Croix, USVI, *Attorney for Appellant.*

JAMES H. ISHERWOOD, ESQ., St. Croix, USVI, *Attorney for Appellee.*

GÓMEZ, *Chief Judge, District Court of the Virgin Islands*; BROTMAN, *Judge of the United States District Court of New Jersey, sitting by designation; and* KENDALL, *Judge of the Superior Court of the Virgin Islands, sitting by designation.*

## MEMORANDUM OPINION

(August 6, 2008)

### I. FACTUAL & PROCEDURAL HISTORY

James Jackman ("Jackman" or "Appellant") was an employee of the decedent, Felix Pitterson ("Pitterson" or "decedent"). As part of that employment, Jackman maintained real property owned by the decedent and also resided on such property at No. 2 Beck's Grove in Frederiksted. Jackman contends that Pitterson, prior to his death in 1991, orally promised him ownership of land at Becks Grove, in consideration for his services in maintaining that property.[1] However, Pitterson's promise to Jackman was not reduced to writing.

Following Pitterson's death, and after commencement of probate proceedings, Jackman filed a creditor's claim against the Estate. That claim sought an ownership interest in the property or in the alternative, restitution for various services rendered. The Estate counterclaimed for possession, restoration of the property and past due rent.

---

[1] Pitterson died testate on October 26, 1991. However, Pitterson's November 4, 1988 testament devised his property to his immediate family, the University of the Virgin Islands and the named executor. The Appellant was not named in the testament. (J.A. p. 13).

On December 8, 1998, after a trial, the court issued an order denying Jackman's creditor's claim but granting Jackman's ownership claim to the property in question. Therein, the court held that Jackman's part performance was a valid defense to the statute of frauds.[2] This determination was guided by evidence that Jackman made valuable improvements on the land, that the decedent bestowed gifts of land to his other employees, and that the decedent intended to honor the oral agreement. (J.A. pp. 10-14.) However, the trial court reserved its final decision, pending review of supplemental briefs to determine the portion of property affected.[3]

After reviewing the parties' post-trial submissions, the court *sua sponte* reversed its previous conclusion that Jackman was entitled to receive property from the Estate. The court concluded that the size, location and dimensions of Jackman's claim could not be sufficiently established. (J.A. p. 485.) Accordingly, by order entered April 23, 2003, the trial court denied Jackman's property claim. (J.A. p. 485.)

On May 13, 2003, Jackman filed a timely notice of appeal of the trial court's April 23, 2003 decision.[4] On June 10, 2004, the Estate filed its application for writ of assistance with the trial court, seeking Jackman's eviction. The writ issued on June 14, 2004. (J.A. pp. 516-517.) On June 29, 2004, Jackman countered the writ's issuance by moving for a stay of proceedings pending appeal and for relief from judgment. (J.A. pp. 512-517.)

However, on September 8, 2004, the court denied Jackman's motion and on September 27, 2004, the writ was executed and Jackman was

---

[2] In that order, the trial court further held that the Estate failed to prove its counterclaims for possession, restoration of the property and past due rents.

[3] The trial court denied Jackman's creditors claim because there was insufficient evidence to establish the value of Jackman's services over the years. (J.A. p. 16) In this appeal, Jackman does not challenge the court's denial of his creditor's claim.

[4] On May 13, 2003, Jackman also filed an untimely motion for reconsideration of the trial court's April 23, 2003 order. That motion was denied by the trial Court on May 21, 2003. (J.A. pp. 488-489, 495.) On October 19, 2006, we held that our review of Jackman's October 4, 2004 appeal was limited to deciding whether the lower court abused its discretion in denying his motion for reconsideration. However, our further review reveals that Jackman filed his notice of appeal simultaneously with the untimely motion for reconsideration; and in his subsequent appeal, Jackman does not challenge the trial court's denial of his motion for reconsideration. Accordingly, we find it prudent to consider the merits of the underlying judgment.

evicted. (Supp. App. p. 2.) On October 4, 2004, Jackman filed a second appeal challenging the trial court's denial of his Motion to Stay Proceedings and Relief from Judgment. We now consider the merits of both appeals.

## II. ISSUES PRESENTED

1. Whether the trial court appropriately exercised jurisdiction to hear Jackman's claim against the Estate.

2. Whether the trial court appropriately exercised jurisdiction to evict Jackman from the property.

3. Whether the trial court erred in denying Jackman's claim to the property.

4. Whether the trial court erred in denying Jackman's motion for stay of eviction and for relief from judgment.

## III. JURISDICTION

This Court has jurisdiction to consider judgments and orders of the Superior Court in all civil cases. Revised Organic Act § 23A, 48 U.S.C. § 1613a;[5] V.I. CODE ANN. tit. 4 § 33.[6] We review *de novo* questions of law, issues implicating rights protected under the U.S. Constitution, and the interpretation of statutes.[7] However, we afford the more deferential clear error review to factual determinations. *Id.*[8]

---

[5] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1994), *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 159-60 (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1) ["Revised Organic Act"].

[6] Jackman's notices of appeal were filed on May 13, 2003 and October 4, 2004 respectively.

[7] *See Gov't of V.I. v. Albert*, 42 V.I. 184, 89 F. Supp. 2d, 658, 663 (D.V.I. App. Div. 2001).

[8] The dissent coins the substantial evidence standard as the applicable standard of review in this matter and cites *Knepp v. Apfel*, 204 F.3d 78, 83 (3d 2000), in support of its position. However, it is a long and ubiquitously well-settled principle that the substantial evidence standard is the guiding standard of review for cases concerning administrative agency decisions. *See Federal Sec. Adm'r v. Quaker Oats Co.*, 318 U.S. 218, 222, 63 S. Ct. 589, 87 L. Ed. 724 (U.S. 1943); *NLRB v. Pittsburgh S.S. Co.*, 340 U.S. 498, 499, 71 S. Ct. 453, 95 L. Ed. 479 (U.S. 1951); *Diaz v. Comm'r of Soc. Sec.*, 39 Fed. Appx. 713, 714 (3d Cir. 2002); *Sinatra v. Comm'r of Soc. Sec.*, 77 Fed. Appx. 578, 579 (3d Cir. 2003); *Envtl. Ass'n v. V.I. Bd. of Land Use Appeals*, 31 V.I. 9, 12-16, 885 F. Supp. 792 (V.I. Terr. Ct. 1994); *Tutu Park v. Writ of Review V.I. Bd. of Tax Review*, 38 V.I. 119, 122 (V.I. Terr. Ct. 1998); *V.I. Labor Union v. Caribe Constr. Co.*, 5 V.I. 665, 670 (V.I. Terr. Ct. 1966). The very case cited by the dissent

## IV. DISCUSSION

### A. Whether the trial court had jurisdiction to hear Jackman's claim against the Estate.

The question of whether the trial court had jurisdiction over this claim involves interpretation of a legislative statute. The standard of review on this question is therefore plenary. *Kean v. Stone*, 966 F. 2d 119, 121 (3d Cir. 1992).

Title 15 V.I.C. § 161 provides that:

> In addition to the jurisdiction and powers conferred upon it by other provisions of the law, the [Superior] Court has jurisdiction and the power to administrate justice in all matters relating to the affairs of the decedents, and, upon the return of process, to try and determine all questions, legal or *equitable*, arising between any or all of the parties to any proceeding. (emphasis added).

*Id.*

The subject of Jackman's claim is property titled in the name of the decedent. Jackman raises partial performance as an equitable defense to the statute of frauds. Thus, this equitable matter is directly related to the affairs of the decedent's estate and falls squarely within the statutory parameters of the trial court's probate jurisdiction.

### B. Whether the trial court had jurisdiction to evict Jackman from the property.[9]

On January 5, 2004, after determining that Jackman's equitable defense failed to overcome the statute of frauds, the trial court determined that Jackman was in unlawful possession of the property and ordered him to vacate and deliver possession of the premises by April 5, 2004. Jackman refused to vacate and on June 14, 2004, the court issued a writ

---

was an appeal of an administrative agency decision concerning social security disability benefits. *See Knepp*, F.3d at 79-81. No administrative agency decisions are at issue in this appeal.

[9] This Court exercises plenary review over questions of law, including jurisdiction. *Government v. Petersen*, 131 F. Supp. 2d 707, 709 (D.V.I. App. Div. 2001); *Peters v. Government of the Virgin Islands*, 2002 U.S. Dist. LEXIS 1287 (D.V.I. 2002).

of assistance. That writ was executed on September 27, 2004, when Jackman was evicted.[10] (J.A. pp. 510-511.)

On appeal, Jackman argues that for a writ of assistance to properly issue, the Estate was required to bring a separate action for forcible entry and detainer against him. Thus, Jackman argues, that the trial court lacked jurisdiction to evict him. We disagree.

■ A writ of assistance[11] is intended to permit the issuing court to carry out its judgment determining title and to ensure delivery of possession to the rightful legal owner.[12] 6 AM. JUR. 2D, *Assistance, Writ of* § 1. Hence, a writ of assistance may properly issue without the need for separate eviction proceedings where it is to enforce an order awarding possession to the applicant.[13] In that regard, local law provides:

> Subject to the provisions of the Federal Rules of Civil Procedure, the person in whose favor a judgment is given in the District or the Superior Court which requires the payment of money, the delivery of real or personal property, or either of them, may have a writ of execution issued for its enforcement, as provided in this chapter.

5 V.I.C. § 471 (1997).[14]

Similarly, the relevant federal rule, made applicable by section 471, specifies that,

---

[10] Generally, the writ of assistance is employed when a court of equity, having jurisdiction of the persons and the property in controversy, has settled the litigants' rights to possession of or title to the property, but a party remains in unlawful possession of it. *Id.*; *State Dept. of Natural Resources v. Winfrey*, 419 N.E.2d 1319 (Ind. Ct. App. 4th Dist. 1981).

[11] "A writ of assistance is a form of process issued by a court of equity to secure possession of land after the title or right to possession thereof has been determined." 6 AM. JUR. 2D, *Assistance, Writ of* § 1 (noting that a writ of assistance is equivalent to a writ of execution at law).

[12] Issuance of a writ of assistance avoids unnecessary expense and delay of requiring a new lawsuit, promotes the ends of justice, prevents unnecessary suits, and commends itself strongly to the approbation of the courts of equity. 6 AM. JUR. 2D, *Assistance, Writ of* § 5.

[13] *See Curtis v. Campbell*, 105 Idaho 705, 672 P.2d 1035, 1037 (Idaho 1983) (noting that a writ is proper if a party in possession has no colorable claim of right to the property as against the applicant); *see also Redding v. Stockton, Whatley, Davin & Co.*, 488 So. 2d 548, 548-49 (Fla.App. 1986).

[14] *See also* TERR. CT. R. 51 (directing that writs be made to the clerk of the division in which judgment entered).

if a judgment directs a party to execute a conveyance of land . . . or to perform *any other specified act* and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party. On application of the party entitled to performance, the clerk shall issue a writ of attachment or sequestration against the party of the disobedient party to compel obedience to the judgment.

FED. R. CIV. P. 70 (2004) (emphasis added).[15]

 Thus, for a writ to issue against a recalcitrant party, there must first be a judgment or order against the disobedient party and second, there must be a duly submitted application for a writ to the court's clerk.

In this case, the Estate met these prerequisites. On January 5, 2004, the Superior Court determined that the Estate was entitled to possession. On even date, the court unequivocally ordered Jackman to convey possession to the Estate by April 5, 2004. Hence, an order awarding possession was clearly issued. However, Jackman disobeyed the court order when he failed to comply by April 5, 2004.

Thereafter, the Estate filed its application for a writ with the Clerk of the Superior Court. Within its application, the Estate referenced the trial court's order demanding possession and clearly sought to avail itself of the remedies provided by FED. R. CIV. P. 70.[16] Thus, when Jackman refused to deliver possession, the writ was properly issued and executed. *See* FED. R. CIV. P. 70.

Moreover, the issuance of the writ to enable the Estate to take possession does not, under these circumstances, present due process issues warranting concern. The procedures mandated for forcible entry and detainer are concerned with providing a summary proceeding for landlords to recover possession without the need for self-help, while

---

[15] The current version of Rule 70(a) specifies that: "*If a judgment requires a party to convey land*, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act be done — at the disobedient party's expense — by another person appointed by the court." FED. R. CIV.P. 70(a) (2008).

[16] The party asking for a writ of assistance usually is required to show that he demanded possession of the property and that possession was refused as a condition precedent to his right to the writ. 6 AM. JUR. 2D *Assistance, Writ* of § 15.

providing tenants with appropriate due process notice. *See* 28 V.I.C. §§ 751, 782, *et. seq.* In this matter, as required in a summary FED proceeding, adequate notice and due process procedures were met.

Here, a trial was held. Thereafter, the trial court entertained post-trial motions providing Jackman an additional opportunity to present his case. As a result, an order issued on April 23, 2003, declaring that Jackson had no colorable claim against the Estate.

A second order issued on January 5, 2004, giving Jackman three months to vacate and deliver possession. (J.A. p. 509.) That order made clear that Jackman's possessory interest, if it at all existed, had come to an end. When Jackman failed to vacate, an application for writ of assistance was filed, the writ later issued and executed on September 27, 2004.

Hence, through these proceedings, Jackman was given notice of the Estate's attempt to divest him of any rights to the property; notice that any rights he claimed to the property were divested; notice that the Estate held ownership and notice that eviction was pending. As such, Jackman had several corresponding opportunities to challenge both the eviction proceedings and the court's underlying order awarding possession to the Estate.

■ The Estate was, therefore, entitled to the court's aid in executing the January 5, 2004 order and was not required to institute a separate action for forcible entry and detainer under these circumstances. 6 AM. JUR. 2D *Assistance, Writ of* § 21 (Noting that writ of assistance is proper "where the applicant's right to possession is clear and substantially free from doubt and when there is no equity or appearance of equity in the defendant or person in possession. . ."); *see* 30 AM. JUR. 2D *Executions* § 584 (writ of assistance appropriate where applicant shows clear right to possession).

## C. Whether the trial court erred in denying Jackman's claim to the property.

### 1. Statute of Frauds

■ The crux of this matter concerns an oral contract for the conveyance of land in exchange for services. It is well established that an oral contract for the sale of land is generally void and unenforceable. *See Fountain Valley Corp. v. Wells*, 19 V.I. 607, 615, 98 F.R.D. 679 (D.V.I. 1983);

*Downing v. Fortuna Bay Estates*, 17 V.I. 20, 25 (Terr. Ct. 1980). This standard, commonly known as the statute of frauds, has been codified in the Virgin Islands.[17]

In this case, no written contract for land existed. Jackman has not produced a note, memorandum, nor any other document that evidences an oral contract for land in exchange for services between Jackman and the decedent. Thus, under the statute of frauds doctrine alone, Jackman's claim would certainly fail. However, the Virgin Islands has acknowledged the doctrine of part performance as a valid defense to the statute of frauds.[18] *Virgin Islands Distrib. v. Durkee Foods*, 19 V.I. 85, 92 (D.V.I. 1982).

## 2. Doctrine of Part Performance

■ The doctrine of part performance is an equitable defense that was established as a means of preventing inequity to a person who, by either inducement or acquiescence, was permitted to rely upon an oral agreement which normally would be void under the statute of frauds. *Id.* Although, not a substitute for the written evidence required, the doctrine of part performance removes the statute of frauds from the case because it would be intolerable in equity for the owner of land to knowingly allow another to invest time, labor and money in that land upon the faith of a contract that did not exist. *Henderson v. Resevic*, 6 V.I. 196, 262 F. Supp. 36, 38-39 (1967). In order to enforce a verbal agreement on the grounds of part performance, the evidence presented must be clear and definite in both the terms and the subject matter of the contract.[19] *Stern v. Seykota,*

---

[17] 28 V.I.C. § 242 provides that:

Every contract for the leasing for a longer period than one year from the making thereof, or for the sale of any lands, or any interest in lands, shall be void unless the contract or some note or memorandum is in writing, and signed by the party to be charged, or by his lawful agent under written authority.

*Id.*

[18] The trial court conceded that the controlling Virgin Islands precedent dealt only with this defense in regards to oral leases for real property, and not for the sale of land. (J.A. p. 8.)

[19] Additionally, the plaintiff must show such acts and conduct of the defendant which amount to a representation that the defendant proposed to honor the oral agreement and not avail himself to the Statute of Frauds in order to escape its performance. *Henderson*, 6 V.I. at 200; 73 AM. JUR. 2D *Statute of Frauds* § 405 (1974). Furthermore, the plaintiff must have relied on this representation, either in performance or pursuance of his contract, so that he

2007 U.S. Dist. LEXIS 14752 (D.V.I. 2007); *In re Estate of Pitterson*, 40 V.I. 13, 16-17 (V.I. Terr. Ct. 1998); 73 AM JUR. 2D *Statute of Frauds* § 401 (1974).

### 3. Whether the subject matter of the oral contract is unclear.

Jackman takes issue with the trial court's conclusion that the size, location and description of the land in question was "extremely unclear". (J.A. p. 485.) The trial court's determinations regarding the size, location and description of land is a question of fact. *See Chidester v. Newark*, 162 F.2d 598, 603 (3d Cir. 1947). We may reverse the trial court's factual finding that the description of the land was unclear only if its finding is clearly erroneous. *See Poleon v. Gov't of the V.I.*, 184 F. Supp. 2d 428 (D.V.I. App. Div. 2002); *Bryan v. Gov't of the V.I.*, 150 F. Supp. 2d 821, 827 n. 7 (D.V.I. App. Div. 2001). If the [trial court's] account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *John F. Harkins Co. v. Waldinger Corp.*, 796 F.2d 657, 661-662 (3d Cir. 1986).[20]

At trial, Jackman was unable to specify the exact boundaries of the land. (App. pp. 113, 140.) Jackman testified that the decedent promised him "ten (10) or eleven (11) acres" in remuneration for his services (J.A. pp. 3-18, 113, 140.) However, despite Jackman's sworn testimony, the trial court was unable to sufficiently ascertain the exact size or specific location of the portion of property agreed upon.

On April 23, 2003, after reviewing supplemental briefs, the trial court determined that Jackman's partial performance failed to overcome the statute of frauds, because, the size and location of the property at issue remained unclear. Now, on appeal, Jackman argues that during the course

---

would incur an unjust and unconscientious injury and loss if the defendant is allowed to rely on the statute. *Henderson*, 6 V.I. at 200; 73 AM. JUR. 2D *Statute of Frauds* § 405 (1974).

[20] It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supporting evidentiary data. *Universal Minerals, Inc. v. C. A. Hughes & Co.*, 669 F.2d 98, 104-105 (3d Cir. 1981). Unless the reviewing court establishes the existence of either of these factors, it may not alter the facts found by the trial court. *Id.* Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *John F. Harkins Co.*, 796 F.2d at 661-662.

of this litigation the Estate surveyed the property[21] and that the survey, together with Jackman's testimony, sufficiently defined the size, location and boundaries of the property agreed upon.

However, Jackman's almost singular focus on the survey is misplaced. Indeed, it is uncontested that the survey was conducted after Pitterson's death. No evidence has been presented which indicates that Pitterson was a party to the survey, that the parties' agreement referenced the survey or that the survey was otherwise conducted to buttress the alleged oral contract against empirical data verifying the size and location of the land. *See Wills v. Young*, 255 F.2d 65, 67-68 (3d Cir. 1958) (holding that surveys conducted subsequent to a contract for the sale of land were inadmissible extrinsic evidence). As such, the hotly contested posthumous survey does little to aid in clarifying the boundaries of the land agreed upon between Jackman and the decedent, during the decedent's lifetime.[22]

■ The dissent in this opinion concludes, without citing relevant authority that "[a]lthough Jackman did not know if the property consisted of ten or eleven acres (J.A. pp. 113, 140), that does not mean that the boundaries of land were unclear or ambiguous." However, it is well settled that a litigant's inability to sufficiently specify the necessary element of a land contract, the very land itself, is fatal to that litigant's claim particularly where he is seeking relief in equity. *Wills*, 255 F.2d at 67 (holding that where the terms of a contract are unclear, equity can enforce a contract only where it is reasonably certain of the subject matter of its enforcement); *see also Roebuck*, 255 F.2d at 211-212 (holding that an enforceable contract in the form of a promise to convey real estate must contain a reasonably adequate description of the land to satisfy the statute of frauds and cases judicially interpreting it); *see also Montaro Brothers Building, Inc., v. Snow*, 190 Conn. 481, 460 A.2d 1297, 1300 (1983).

Our review of the record leads us to the conclusion that, despite several attempts to substantiate his claim to the property, Jackman failed to submit conclusive evidence that specified the location, metes and bounds

---

[21] The trial court held that the survey conducted by the Estate was privileged work product.

[22] Jackman testified that the decedent told him the land consisted of ten acres or more but was unable to specify the size of the land, its location and boundaries. (J.A. pp. 113, 137-140, 161.)

of the land orally agreed upon between himself and the decedent.[23] We, therefore, cannot determine that the Superior Court erred in it conclusion.

The dissent, however, embarks on a fact-driven discussion that leads to the selection of one of two possible outcomes after weighing the trial court evidence. Such a discussion takes this court on an excursion into an area that is verboten for a reviewing court — that is, reversing a trial court solely because a reviewing court would have weighed the evidence differently even though, as is the case here, the trial court's assessment is plausible.[24] Accordingly, we shall affirm the trial court's April 23, 2003 order denying Jackman's claim for land.[25]

## D. Whether the trial court abused its discretion in denying Jackman's motion to stay and for relief from judgment.

On June 29, 2004, Jackman moved to stay the eviction proceedings pending appeal and for relief from the trial court's April 23, 2003 order. On September 8, 2004, the trial court denied Jackman's motion, and on September 27, 2004, a writ of execution was executed and Jackman was evicted. (A. Supp. App. p. 2.) On October 4, 2004, Jackman filed a timely notice of appeal challenging the trial court's September 8, 2004 denial of his Motion for Stay and Relief from Judgment.

Having affirmed the trial court's denial of Jackman's claim for real property against the Estate, and Jackman having been evicted, no further relief is available to him. Accordingly, Jackman's challenge to the trial court's denial of his motion to stay and for relief from judgment is moot. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996); *Clark v. K-Mart Corp.*, 979 F.2d 965, 967 (3d Cir. 1992); *Khodara Envtl., Inc. v. Beckman*, 237 F.3d 186, 192-93 (3d Cir. 2001) (all standing

---

[23] Even when the contract is evidenced in writing, the contract must contain a reasonably adequate description of the land if it is to be enforceable. *Roebuck v. Hendricks*, 3 V.I. 680, 255 F.2d 211, 212 (3d Cir. 1958); *see also Wills*, 255 F.2d 67 (holding that "while references may be made to aid the questioned description, they must be references to maps or charts in existence, and not maps or charts to be drawn later.")

[24] Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *John F. Harkins Co. v. Waldinger Corp.*, 796 F.2d 657, 661-662 (3d Cir. 1986).

[25] Where the admissibility of the survey would have no determinative effect in clarifying the portion of property affected, we find it unnecessary to reach whether the trial court committed reversible error in determining that the survey was privileged work product.

for the proposition that an appellate court may not reach the merits of an issue that has become moot and no effective relief available).

## V. CONCLUSION

For the reasons cited above, we affirm the trial court's April 23, 2003 order denying Jackman's claim for real property against the Estate. Jackman's challenge to the trial court's denial of his Motion to Stay and for Relief from Judgment is denied as moot. An order consistent with this opinion shall follow.

KENDALL, J. *dissenting*

The majority holds that despite the existence of a valid oral contract between Jackman and the decedent, in which Jackman worked for the decedent, uncompensated, for five (5) years in exchange for land, this contract is unenforceable, and Jackman is not entitled to any of the land that he was promised. Because I believe that the property at issue was sufficiently ascertainable to order specific performance, and because today's holding works a gross injustice, I dissent.

This Court is bound by the lower court's findings of fact if they are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). As the Probate Court did not make any additional findings of fact in its April 23, 2003 Order, the findings of fact from the December 8, 1998 Memorandum Opinion are controlling.

### 1. Uncertainty as to the Boundaries of the Land Agreed Upon in the Contract

The Probate Court, after finding that Jackman had a valid claim of ownership over the land, reversed its decision, *sua sponte,* because it found that the size, location and description of the property at issue were unclear.

The RESTATEMENT (SECOND) OF CONTRACTS, § 362, comment "b" provides:

> Before concluding that the required certainty is lacking, however, a court will avail itself of all the usual aids in determining the scope of the agreement. . . . [I]f performance has begun by mutual consent, equitable relief may be appropriate with the court supplying the missing terms so as to assure the promisor all advantages he reasonable expected.

The majority states that Jackman failed to submit evidence that sufficiently defined and clarified the metes and bounds of the land orally agreed upon. (p.12-13). The drawing prepared by Jackman's own surveyor was not considered by the majority because the survey had been conducted after Pitterson's death. "As such, the hotly contested posthumous survey does little to aid in clarifying the boundaries of land agreed upon by Jackman and the decedent, during the decedent's lifetime." (p.12).

What the majority appears to overlook, however, is that an oral contract will rarely have extrinsic evidence as to the agreement between the parties. Since the contract was not in writing (thus making it an "oral" contract), the parties were unlikely to have "evidence" that outlined the land agreed upon. If the parties failed to put the contract in writing, it is unreasonable to expect that they would have hired a surveyor to survey the property that was the subject matter of the oral contract. The only way of assessing the terms of the oral contract was by the parties' understanding of that contract. As the decedent could not testify about this matter, the Court is left to rely on Jackman's understanding of the property contemplated by the oral contract.

The majority states that at trial Jackman was unable to specify the exact boundaries of the land. The transcript reveals, however, that Jackman was certain as to the boundaries of the property decedent promised him. He testified that the decedent had shown him the boundaries of what was to be his property, which were clearly marked with a fence, red flags and a post. (J.A. at 113, 139). He testified that the boundaries were clear, and that any surveyor could go onto the property and identify it. (J.A. at 113) Although Jackman did not know if the property consisted of ten (10) or eleven (11) acres (J.A. at 113, 140), that does not mean that the boundaries of the land were unclear or ambiguous. Pursuant to his understanding of the contract, he hired a surveyor to draw the property that was orally conveyed to him. "[A] description is adequate if it would enable a competent surveyor to find and identify the land with the aid only of the description itself and of proper extrinsic facts referred to in the agreement." *Wills v. Young*, 255 F.2d 65, 67 (3d Cir. 1958). The majority's insistence on further evidence, therefore, is not easily understood.

The majority states that "the trial court was unable to sufficiently ascertain the portion of property agreed upon." (p.12). The trial court, however, stated in its 1998 opinion that the boundary survey of the land

was "adequate to represent the specific property claims brought by the Claimant", and that issuance of a judgment based on the survey was possible. (J.A. at 15).

As such, I find that the land that was the subject of the contract was reasonably certain and sufficiently ascertainable to grant specific performance in this case. The majority's insistence on further proof is unwarranted.

## 2. Equitable Considerations

The principles of equity are aimed at securing complete justice for the parties before the court. *Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S. Ct. 1086, 1089, 90 L. Ed. 1332 (1946). "A court of equity has traditionally had the power to fashion any remedy deemed necessary and appropriate to do justice in a particular case." *United States v. Price*, 688 F.2d 204, 211 (3d Cir. 1982) (citing *Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S. Ct. 587, 591, 88 L. Ed. 754 (1944)).

In its December 8, 1998 Memorandum Opinion, the Probate Court found that "any remedy other than specific performance would be unjust." (J.A. at 15). Five years later, however, the Court found that equitable relief in the form of specific performance was not available. A number of facts make the Court's holding inequitable. Jackman moved onto the property at the decedent's request. (J.A. at 4). He was not compensated for his services, (J.A. at 10), as there was an oral contract between the parties to perform services in exchange for land. (J.A. at 17). Numerous witnesses testified that the decedent had personally told them that he had given Jackman land. (J.A. at 12). Most importantly, Jackman constructed a permanent residence on the property, after the previous house had been destroyed by Hurricane Hugo, at his own expense, with the decedent's knowledge and approval. (J.A. at 13). Jackman farmed the land, (J.A. at 15), and when his children were born, he planted a fruit tree on this land to represent each of them, burying their navel strings beneath the trees. (J.A. at 14 n.9). He testified that he would not have performed this action had there been no agreement for the land with the decedent. *Id.* The Court found that it was the decedent's intention to honor the oral land contract (J.A. at 14) because of the close bond which existed between him and Jackman. (J.A. at 10). Moreover, the decedent had made gifts of real property on at least three different occasions to individuals who were not members of his family. Two of them were employees who had received

land in return for their services. (J.A. at 9-10). The Court also found that Jackman had acted in reliance on this oral contract, and that such reliance was reasonable. (J.A. at 14).

Jackman's actions — specifically building a house at his own expense and planting fruit trees for each of his children — were actions a man would typically take on property that he owned, not on property that was temporarily in his possession.

The RESTATEMENT (SECOND) OF CONTRACTS § 129 provides for the enforcement of a contract for the transfer of an interest in land, notwithstanding failure to comply with the Statute of Frauds, when the "party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement." Comment "a" of section 129 states: "Enforcement has . . . been justified on the ground that repudiation after 'part performance' amounts to a virtual fraud."

In *Glass v. Kirkland*, 29 F.3d 1266, 1268 (8th Cir. 1994), the Court found that despite the strict terms of the statute of frauds, "equity will enforce an oral contract to convey real estate where one party has partially performed or has done other acts in reliance on the contract and thereby has changed position so materially that to invoke the statute would constitute a gross injustice."

Here, denial of Jackman's ownership interest in the land amounts to a virtual fraud. After the Court's finding that the oral contract was valid, and that Jackman had moved onto the land, improved the land, built a permanent residence on the land, and performed services for the decedent for five years with no compensation, all in reliance on the decedent's promise, I fail to see how the principles of equity are being met in this case.

### 3. Probate Court's Denial of Stay was an Abuse of Discretion

On June 29, 2004, Jackman moved to stay the eviction proceedings pending appeal. The court denied the Motion, and Jackman and his family were evicted on September 27, 2004.

In determining whether to grant a stay, the Court must balance four factors: (1) whether there is a strong likelihood of success on the merits of the appeal; (2) whether the movant will suffer irreparable harm if the

stay is not granted; (3) whether a stay will impose substantial harm on the other interested parties; and (4) whether a stay is in the public interest. *Government Guarantee Fund v. Hyatt Corp.*, 34 V.I. 274, 278, 167 F.R.D. 399 (D.V.I. 1997) (citing *Territorial Court of the Virgin Islands v. Richards*, 674 F.Supp. 180, 181 (D.V.I. 1987)).

### a. Success on the Merits

As discussed above, Jackman has a meritorious claim, and the Probate Court erred in denying him equitable relief. Also, since the Probate Court had previously found in Jackman's favor, the court should have determined that there was a strong likelihood of success on the merits.

### b. Irreparable Harm

Jackman clearly suffered irreparable harm by the Court's failure to grant a stay, as he and his family were evicted from their house, and the house was subsequently demolished.

### c. Harm to Non-Moving Party

The granting of a stay would not have harmed the Estate, as Jackman had occupied the property in question for the past nineteen (19) years, with the decedent's consent, and there were no new facts that necessitated his prompt eviction.

### d. Public Interest

The public interest also favored the granting of a stay pending determination of the case on appeal, as Jackman is now unable to recover the loss he incurred from any source.

All four factors, therefore, supported the granting of a stay pending appeal, thus the Probate Court's failure to grant the stay was an abuse of discretion.

### 4. Probate Court's *Sua Sponte* Reversal was not Justified

By Order dated April 23, 2003, the Probate Court reversed its 1998 opinion and found that it was extremely unclear which particular parcel of land Jackman was entitled to, as neither the size, location, nor description of the land had been provided to the Court "in a sufficiently clear manner as to even allow for its invocation of equitable powers." (J.A. at 485). The majority found persuasive the fact that the same Court which had issued

the December 1998 opinion later reversed what it believed was a wrong decision. What the majority does not address, however, is the Court's failure to give its reasons for the "about-face." Indeed, it is significant that the same Court which authored a lengthy 16 page "Memorandum Opinion" finding that Jackman had a valid claim of ownership to the property would decide, five years later, that the contract could not be enforced, in a three-page Order lacking additional findings of fact. Also absent is any explanation for why the boundary survey of the land, which the judge found to be "adequate to represent the specific property claims" in 1998, failed to be sufficient in 2003. Rather than being persuasive, I find troubling the conspicuous absence of any additional factual findings or justification for the Court's "change of heart."

### 5. Conclusion

Jackman worked for the decedent for five years, without receiving compensation, but with the mutual understanding that he would receive land in exchange for his services. The Probate Court acknowledged that this was a valid oral contract, but denied Jackman the property that he worked for, and denied a stay of the eviction proceedings. The stay would have cost the Estate little, if anything. For Jackman, however, denial of the stay resulted in the eviction of him and his family from the property they had lived on and improved for the past nineteen (19) years, as well as the demolition of the house that he had constructed himself. Now this Court holds that there was nothing improper about the Probate Court's decision. Because I cannot find that justice has been served in this case, I respectfully dissent.