**WILLIAM C.C. BARNES, TRUSTEE OF MALCOLM W. FORD, 111 TRUST, Plaintiff**

**v.**

**ELEANOR WEBER a/k/a "TISH WEBER" a/k/a "VALBERG REDVAN", and WILLIAM RICHARD HAGBERG a/k/a RICK HAGBERG, Defendants**

No. ST-08-CV-379

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

December 16, 2008

167

PAULA D. NORKAITIS ESQ., Tom Bolt & Associates, P.C., St. Thomas, USVI, *For the Plaintiff.*

ELEANOR WEBER, *pro se*, St. Thomas, USVI.

RICHARD MAGBEWG, *pro se*, St. Thomas, USVI.

CARROLL, *Judge*

## MEMORANDUM OPINION

(December 16, 2008)

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss Plaintiffs Forcible Entry and Detainer Complaint and Plaintiffs Motion for Repossession. A hearing was held on September 16 and 19, 2008. Plaintiff was represented by Paula D. Norkaitis Esq., and Defendants Eleanor Weber a/k/a Tish Weber a/k/a Valberg Redvan and William Richard Kagberg a/k/a Rick Kagberg appeared in person and *pro se*. Both parties filed additional post-hearing memoranda in support of

their positions. In addition, Defendants filed a Motion to Submit Additional Evidence. The Court has determined that it does have jurisdiction over this action as a Forcible Entry and Detainer proceeding and will grant Defendants' Motions to Dismiss and deny Plaintiffs Motion for Repossession. In light of the Court's decision, the Defendants' Motion to Submit Additional Evidence will be denied as moot.

## STATEMENT OF FACTS

Plaintiff William C.C. Barnes ("Barnes"), Trustee of the Malcolm W. Ford 111 Trust ("the Ford Trust"), brings this forcible entry and detainer ("FED") action against the Defendants, Eleanor Weber a/k/a Tish Weber a/k/a Valberg Redvan ("Weber") and William Richard Hagberg ("Hagberg"), seeking restitution of the property located at Parcel No. 57B-3 Estate Smith Bay, Nos. 1, 2 and 3 East End Quarter, St. Thomas, U.S. Virgin Islands ("the Smith Bay property" or "the property"). The property was previously owned by Malcolm W. Ford III ("Ford"), who is now deceased, and the property is presently alleged to be owned by the Ford Trust.

This action for restitution was initiated on August 20, 2008. Defendants both answered the complaint on September 15, 2008 and asserted that the Court lacks jurisdiction because they both occupy the premises under a claim of right.

In or about November 2007, in exchange for her housekeeping and caretaking services, Weber moved onto the Smith Bay property, which was then owned by Ford. Weber claims that she was given a life estate in the property by Ford, and that she has never paid rent or signed a lease. Hagberg moved onto the Smith Bay property around the same time, and he agreed with Ford to provide maintenance and pool cleaning services in exchange for rent. Hagberg, who also never signed a claims that in exchange for the services he provided and cash made to Ford, his rent has been paid up to January 2009,[1]

---

[1]    There is some discrepancy as to the exact term of the alleged lease interest that Ford gave to Hagberg. In Defendants' latest pleading, it says that Defendant Hagberg's "rent is paid through January 2009," Defs. J. Mem. In Supp. Of Their Respective Defenses and Mots. To Dismiss, p. 2) while the handwritten document that Defendant Hagberg proffered with his Motion to Dismiss says, "Mr. R. Hagberg . . . has paid rent till Jan. 01, 2009 . . ." (Def. Hagberg's Mot. To Dismiss, Def. Ex. A).

Ford was hospitalized on June 26, 2008. On June 29, 2008, while Ford was in the hospital, he allegedly memorialized or conveyed interests in the property to Hagberg and Weber. At sometime during the first half of 2008, Ford created the Ford Trust. The Smith Bay property was deeded to the Trust Ford by Barnes, acting as attorney-in-fact for Ford, on July 3, 2008. Weber and Hagberg were served with thirty-day notices to quit on July 9, 2008. Ford was released from the hospital on July 11, 2008.

The litigants agree that a meeting was held in the home of Ford on July 15, 2008. Various people were in attendance, including Weber, Hagberg, Ford, and Attorney Tom Bolt ("Bolt"), who is Barnes's attorney-in-fact and successor trustee for the Ford Trust. The litigants agree that at this meeting, Ford stated, "I want Tish taken care of." (Pl's. Mot. For Repossession, p. 3, ¶ 10; Defs. J. Response to Pl's. Mot. For Repossession, p. 6, ¶ 10). However, Weber contends that Ford then stated something to the effect of, "[s]he stays in the house as long as she lives," (Defs. J. Response to Pl's. Mot. For Repossession, p. 6, ¶ 10) while Bolt recalls that Ford stated, "I do not want Tish removed [from the house] as long as I am alive." (Pl's. Mot. For Repossession, p. 3, ¶ 10). Ford passed away on August 11, 2008.

On or about August 28, 2008, Defendants were each served with a summons and complaint for the instant action. Defendants each filed a Motion to Dismiss on September 15, 2008. A hearing in this matter took place on September 16 and 19, 2008. Plaintiff and Defendants have since filed supplemental briefings on the merits of their respective claims. In addition, the Defendants have also filed a Motion to Submit Additional Evidence, which the Plaintiff opposes.[2]

## DISCUSSION

I. Forcible Entry and Detainer Actions

Under V.I. CODE ANN. tit. 28, § 782 (1996),[3] an owner is entitled to maintain an action to recover possession of property held by another by

---

[2]   As noted above, the Court will deny Defendants' Motion to Submit Additional Evidence as moot in light of the holding regarding the Court's jurisdiction to proceed in this matter.

[3]   The statute authorizing this action states, "[w]hen a forcible entry is made upon any premises, or when an entry is made in a peaceable manner and the possession is held by force, the person entitled to the premises may maintain an action to recover the possession thereof." V.I. CODE ANN. tit. 28, § 782(a) (1996).

force. In this case, Barnes, as trustee for the Ford Trust, has asserted the right to recover the Smith Bay property. He states that Weber and Hagberg hold the property in question without any written lease or agreement to legitimize their possession. Both Weber and Hagberg claim that they are entitled to possess the Smith Bay property pursuant to agreements with Ford. Weber claims that Ford gave her a life estate in the property in exchange for her services as a homemaker and caretaker and also in consideration for helping him lose a great deal of weight. Hagberg claims that he performed maintenance services for Ford and loaned him money, and that Ford had stated that he could stay on the property until January 2009.

██ This case is governed by the law set forth in *Estate of Thomas Mall, Inc. v. Territorial Court of the Virgin Islands*, 923 F.2d 258 (3d Cir. 1991), which sets forth the parameters of an FED action.

> FED complaints are summary actions to determine rights of peaceable possession of real property. . . . But speedy adjudication of the issue of peaceable possession comes at a price. The price is that the scope of an FED proceeding is very limited. Unless the statute is to the contrary, the jurisdiction of the Court in FED cases is confined to determining the issue of peaceable possession and does not extend to (a) an adjudication of title or (b) the right to possession; nor can the justice adjudicate a right of possession that depends on an equitable interest in the premises [] or inquire into equitable rights and give relief to which the party might be entitled in equity.
>
> . . .
>
> As soon as a defendant in possession in an FED action raises a colorable defense requiring construction of an agreement between the property owner and the party in possession, an FED action will not lie.

*Estate of Thomas Mall*, 923 F.2d at 264 (internal citations omitted) (citing *C.M.L., Inc. v. Dunagan*, 904 F.2d 189, 190 (3d Cir. 1990); *Inter Car Corp. v. Discount Car Rental*, 21 V.I. 157, 159 (Terr. Ct. 1984); and *Iron Mountain & H.R. Co. v. Johnson*, 119 U.S. 608, 612, 7 S. Ct. 339, 30 L. Ed. 504 (1887)).

██ An FED action is not available where the Defendant is occupying the property under a claim of right. *Estate of Thomas Mall*, 923 F.2d at 264. Furthermore, "[w]here a tenant is retaining possession by force, relief is available in a summary FED proceeding only if there 'is an

172

undisputed oral or written lease agreement, and rent is due and owing thereon; or [t]here is an undisputed oral or written lease which has expired.'" *Dunagan*, 904 F.2d at 191 (quoting *Inter Car*, 21 V.I. at 159).

■ The hearing in this matter was conducted consistent with the principles stated in the Supreme Court of the Virgin Islands decision in *Virgin Islands Port Authority v. Joseph*, 49 V.I. 424, 431 (V.I. 2008) ("The trial court should hear evidence until it is able to determine, based on the evidence, whether [defendant] has raised a facially bona fide and good faith defense to [plaintiff's] claim for possession."); *see also Inter Car*, 21 V.I. at 159 (court is duty-bound to proceed with the evidence until it appears that the question involved is in fact one of title or a complicated case of the right to possession).

In this matter, Hagberg contends that he has a right to possession of the property through January 2009 or, in the alternative, an equitable interest in the property. Weber's claim is that she has been granted a life estate in the property by virtue of a deed given to her while Ford was in the hospital or, alternatively, she has a right to possession or an equitable interest in the property.

## II. Both Defendants Claim Interests in the Smith Bay *Property* Based Upon Oral *and Written Agreements*

Both Defendants assert that Ford made oral promises to them to give them interests in the Smith Bay property, and that Ford also supported these promises in a written document that he purportedly signed. Hagberg states that Ford orally promised him that he could remain on the property either until January 2009 or through January 2009 and that on June 29, 2008, Ford memorialized the oral promise in a handwritten document while he was in the hospital. Weber also relies on oral promises, and states that a life estate was conveyed to her by the handwritten document signed by Ford.

To support their claims to possession as a matter of right, both Weber and Hagberg cite a handwritten statement that Ford allegedly signed on June 29, 2008, while he was in the hospital. In that statement, Weber is given a life estate in the property and it is acknowledged that Hagberg's rent has been paid until January 2009.[4] Weber and Hagberg testified that

---

[4]  *See* Footnote 1, *supra*.

the document was signed in their presence and that it was subsequently signed by two witnesses whom they contacted by cell phone. Weber and Hagberg then took the document to a notary, who acknowledged the document. Barnes asserts that the document, which allegedly grants these rights to Defendants, is fraudulent. Defendants assert that the document is an "instrument in writing" that amends or revokes that part of the Ford Trust property that they currently occupy.[5]

Under V.I. CODE ANN. tit. 28, § 241 (1996),[6] except by operation of law, real property interests for a term exceeding one year can only be created by a written deed or conveyance with formalities prescribed by law. V.I. CODE ANN. tit. 28, § 241 (a)(2). Those formalities include a deed that is signed by the person conveying the property interest and that the deed then be acknowledged or proved and signed "in the presence of two witnesses." V.I. CODE ANN. tit. 28, §§ 41, 42(a) (1996).[7]

---

[5] The relevant section of the Ford Trust agreement states:

ARTICLE X. *Power of Revocation and Amendment.*

A. The Settlor may at any time or times during his lifetime without the consent of any person, by instrument in writing delivered to the Trustee, amend or revoke this agreement in whole or in part, or to withdraw the whole or any part of the trust estate hereunder. It shall be deemed for purposes hereof that any such withdrawal by the Settlor, with or without notice, of Trust property during the Settlor's lifetime, for purposes other than for Trust purposes, shall be deemed to have been withdrawn pursuant to this Article, and thus to automatically terminate the trust relation to any such property. Any such withdrawal shall not create rights in any other person under this agreement and such withdrawals need not be restored to the trust estate. The trust property, to which any revocation of trust relates shall be conveyed to the Settlor or otherwise as the settler may direct. This power is personal to the Settlor and may not be exercised by the Settlor's legal representatives or others. Malcolm W. Ford III Trust Agreement, July 3, 2008, pg. 9.

[6] § 241. Creation or transfer of interest in real property

(a) Except for a lease for a term not exceeding one year, no estate or interest in real property, and no trust or power over or concerning real property, or in any manner relating thereto, can be created, granted, assigned, transferred, surrendered, or declared, otherwise than —

    (1)   by operation of law; or

    (2)   by a deed of conveyance or other instrument in writing, signed by the person creating, granting, assigning, transferring, surrendering, or declaring the same, or by his lawful agent under written authority, and executed with such formalities as are required by law. . . .

V.I. CODE ANN. tit. 28, § 241 (1996).

[7] § 41. Manner of executing conveyance

■ With the facts presently before the Court, the analysis of the validity of the document presented by Hagberg and Weber could proceed further. However, it is not necessary to do so to determine the question of the Court's jurisdiction to proceed with this FED action. The Defendants have sufficiently shown through the facts before the Court that title to the premises is in question and that there is a bona fide question of the existence of a lease at law or in equity that has not expired. *Inter Car*, 21 V.I. at 159. Since the Defendants have raised a colorable defense which requires the construction of the agreement between them and the property owner, these issues cannot be sorted out in an FED proceeding.

Although Barnes has questioned whether the handwritten document establishes that any interest was given to the Defendants in the Smith Bay property, this question will have to be addressed in a civil action providing full discovery and full exploration of all of the issues available. Weber can certainly argue that the handwritten document which was allegedly signed by Ford, and witnessed and notarized in accordance with the statute, conveyed a life estate to her which could not subsequently be defeated by the conveyance of the same property to the Ford Trust. In opposition, Barnes can argue that the document was not witnessed or notarized properly under the terms of the statute.[8] The parties, however, miss the point in inviting the Court to resolve at this time whether the document was valid in conveying a life estate to Weber. The resolution of this question will have to await a later disposition in a civil action.

---

A conveyance of lands, or of any estate or interest therein, may be made by deed, signed by the person from whom the estate or interest is intended to pass, being of lawful age, or by his lawful agent or attorney and acknowledged or proved, and recorded as directed in this title, without any other act or ceremony.

§ 42. Execution and acknowledgment of deeds

(a) Deeds executed within the Virgin Islands of lands or any interest in lands therein shall be executed in the presence of two witnesses, who shall subscribe their names to the same as such; and the persons executing such deeds may acknowledge the execution thereof as provided in chapter 5 of this title. . . .

V.I. CODE ANN. tit. 28, §§ 41, 42(a) (1996).

[8] In *Milligan v. Khodra*, 46 V.I. 305 (D.V.I. 2004), the Court found a mortgage document invalid because it was not witnessed or notarized in accordance with the statutory requirements under V.I. CODE ANN. tit. 28, § 42. *Milligan*, 46 V.I. at 318 (a conveyance that does not meet the statutory requirements cannot pass valid and legal title; substantial compliance with the requirements is not sufficient).

Turning to Hagberg, the handwritten document can be construed as a written lease between him and Ford, or evidence of an oral agreement between the Defendant and Ford. Since the term of the alleged lease is less than a year, though, the agreement would not have to be in writing.[9]

■■ Weber and Hagberg also attack the Ford Trust agreement as fraudulent and state that Bolt (attorney-in-fact for Barnes) cannot legally notarize documents in which he has an interest. Defendants argue that under V.I. CODE ANN. tit. 3, § 777(b) (1995),[10] Bolt is an interested party within the meaning of the statute because he is named as the successor trustee for the Trust. Since the Court finds that this argument is not frivolous,[11] the Defendants may also argue the validity of this position in a civil proceeding.

■ Both Defendants also assert that they have an equitable interest in the property which cannot be resolved in the context of an FED proceeding. The Court agrees that based upon the testimony of the Defendants and the Defendants' witness, Jerald David, which was corroborated in part by Bolt, that the Defendants have sufficiently established that they may have an equitable claim to an interest in the property which should be resolved in a civil action and not an FED proceeding.

The Court has to determine whether by virtue of the testimony at the hearing, that the Defendants have raised a defense that requires the Court to "adjudicate a right of possession that depends on an equitable interest in the premises" or to "inquire into equitable rights and give relief to which the [Defendants] might be entitled in equity." *Estate of Thomas*

---

[9] *See* footnote 6, *supra*.

[10] That statute reads, "[n]o notary public shall certify, attest or take an oath or acknowledgment for or to an instrument to which he is an interested party." V.I. CODE ANN. tit. 3, § 777(b) (1995).

[11] Whether Bolt should have been disqualified from witnessing and notarizing the Trust document that named him as successor trustee is a factual issue that should not be resolved in the context of an FED proceeding. *See Beneficial Industrial Bank v. Monsanto*, 6 V.I. 126, 127 (1967) (an interested party is precluded from acknowledging documents as a notary public); *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11, 24 (Neb. 2003) ("Whether a notary is disqualified, by virtue of a relationship or interest, is a factual question to be determined from the circumstances of each particular case. . . . The general rule is that a notary has a disqualifying interest in a proceeding if the notary has a financial or beneficial interest in the transaction other than receipt of the ordinary notarial fee, or is named, individually, as a party to the transaction.").

*Mall*, 923 F.2d at 264. If they have done so, the FED action will not lie for that reason alone. *Id*; *see also Dunagan*, 904 F.2d at 191.

Hagberg claims that he worked on Ford's property and that Ford gave him an oral lease to remain on the property until January 2009 in recognition of the services that Ford received from Hagberg. Weber asserts that she never agreed to pay rent or lease the premises and that she was granted a life estate in the property by Ford. Weber relies upon the agreement signed by Ford while he was in the hospital, which is evidence that Ford intended to convey a life estate to her. Weber also points to evidence that Ford ratified the validity of this document when he returned from the hospital and stated that it was his intention that Tish could stay on the property as long as she lived. This assertion by Ford was allegedly witnessed by several people who were present at the time that it was made. It is true that Bolt has a different recollection of this conversation, but, as noted above, Bolt's testimony partially corroborates the fact that Ford was appreciative of the services that Weber had rendered to him, and wanted to reward her in some fashion by allowing her to stay on the property.

██ ██ Weber's assertion that she relied on Ford's oral promises and provided services to him in exchange for the promised life estate may provide another avenue of defense against this action, because the doctrine of partial performance is recognized as a defense to the Statute of Frauds in the Virgin Islands. *Jackman v. Pitterson*, Case No. 2004/147, 2008 U.S. Dist. LEXIS 65111, *16 (D.V.I. August 6, 2008). *Jackman* provides:

> In order to enforce a verbal agreement on the grounds of part performance, the evidence presented must be clear and definite in both the terms and the subject matter of the contract. . . . Additionally, the plaintiff must show such acts and conduct of the defendant which amount to a representation that the defendant proposed to honor the oral agreement and not avail himself to the Statute of Frauds in order to escape its performance. Furthermore, the plaintiff must have relied on this representation, either in performance or pursuance of his contract, so that he would incur an unjust and unconscientious injury and loss if the defendant is allowed to rely on the statute.

*Jackman*, 2008 U.S. Dist. LEXIS 65111, at *16, n. 19.

177

■ In this matter, Weber has provided written evidence to support her claim to a life estate and provided credible evidence that she lived on the property and provided services to Ford before his death. At this juncture, the evidence is sufficient to support a colorable defense of partial performance. *See id.*, at **18-19 (Jackman's claim failed because he was unable to provide sufficient evidence in the form of any written document or clear and convincing testimony regarding the property in question).

Resolution of the question regarding the validity of the equitable interest that Hagberg and Weber have in the Smith Bay property will have to wait for another day, and the question will have to be resolved in another forum. Hagberg and Weber have established that they may have an equitable and legal interest in the property and for that reason, the proceedings concerning Hagberg and Weber are not properly before this Court in a summary FED proceeding. *Estate of Thomas Mall*, 923 F.2d at 264.

## CONCLUSION

This case presents numerous issues with respect to Defendants' claims and defenses, which should be dealt with in a regular civil action. Accordingly, this action will be dismissed as an FED proceeding, and the Plaintiff may re-file as a civil action. *Id*; *see also Four Winds Plaza Corp. v. White*, Case Nos. 19512004 (Super. Ct.), 2005-203 (D.V.I.), 2008 U.S. Dist. LEXIS 61484, *12 (D.V.I. August 5, 2008). An appropriate Order will follow.